COMMONWEALTH vs. DAVID P. GRECO.

No. 08-P-289.

Middlesex. September 16, 2009. - February 22, 2010.

Present: DUFFLY, MILLS, & MEADE, JJ.

*Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Confrontation of witnesses, Instructions to jury, Voluntariness of confession. *Evidence,* Certificate of drug analysis, Judicial notice. *Controlled Substances. Habitual Offender.*

At the trial of indictments charging, inter alia, distribution of a class E controlled substance, error arising from the admission in evidence of certificates of drug analysis, without testimony by an analyst, to prove the identity of the substances in question, was harmless beyond a reasonable doubt, where there was no reasonable possibility that the evidence complained of might have contributed to the conviction, given the overwhelming circumstantial evidence identifying the substances in question and the sparse references at trial to the certificates. [298-300]

At a criminal trial, the judge did not err in taking judicial notice, based on the Physicians' Desk Reference, a recognized authority, of the brand name of a particular generic drug. [300-301]

At the trial of indictments charging, inter alia, distribution of a class E controlled substance, the omission from the judge's instructions to the jury of the definitions of two elements of the distribution charge did not create a substantial risk of a miscarriage of justice, where those elements were not live issues at trial. [301-302]

The judge at a criminal trial did not err in declining the defendant's request for an instruction on the doctrine of humane practice, where the voluntariness of the defendant's statement was not a live issue at trial. [302]

This court vacated the portion of a judgment that stated that a criminal defendant was found guilty of a subsequent offense, where there had been no proceedings of any kind on the subsequent offender portion of the criminal complaint. [302-303]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on September 14, 2006.

Pretrial motions to suppress evidence were heard by *Severlin B. Singleton, III,* J., and the case was tried before *Dominic J. Paratore,* J.

*Valerie A. DePalma* for the defendant.

*Stephen C. Hoctor,* Assistant District Attorney, for the Commonwealth.

MILLS, J. After a jury trial, the defendant, David P. Greco, was convicted of distribution of a class E controlled substance, G. L. c. 94C, § 32D(*a*), and distribution within a school zone, G. L. c. 94C, § 32J.[1] On appeal, he claims that (1) the certificates of drug analysis were improperly admitted; (2) the judge improperly took judicial notice that Seroquel is the brand name for the generic drug quetiapine; (3) the jury instructions were flawed; (4) the judge should have given a humane practice instruction; and (5) the defendant was improperly sentenced as a subsequent offender.

*Background.* On September 13, 2006, at 2:56 P.M., in front of a Walgreens pharmacy, two Cambridge police detectives observed the defendant remove pills from a large prescription bottle and hand some of them to another individual, who then gave some money to the defendant. The detectives approached the two men and ordered the individual to whom the pills had been given to release his clenched fist. He refused, a physical struggle ensued, and the detectives recovered four yellow pills from his right hand. The defendant stated that "[h]e gave me ten bucks for the pills." A search of the defendant revealed a ten-dollar bill and a one-dollar bill as well as two prescription pill bottles, one of which was labeled with the defendant's name and the drug name Seroquel[2]; the bottle was admitted in evidence. It contained eighty-five pills which were also introduced into evidence. Detective Boyle testified that the pills were "yellow tablets" which "have a stamp on them that says 'Seroquel 100.' " These facts are uncontested.

In describing the four pills that had been recovered from the individual's clenched fist, Detective Boyle testified that they "are four yellow tablets . . . [and] have the words Seroquel 100 mg stamped on them"; they appeared to be identical to the pills in the bottle. At trial, one certificate of analysis was admitted to identify the pills from the bottle, and a second certificate

---

[1] The defendant pleaded guilty to conspiracy; that conviction was placed on file with the defendant's consent and is not before us.

[2] The label, which bears the Walgreens's name and logo, contains the statements "DAVID P GRECO" and "SEROQUEL 100 MG TABLETS." The side label states "ROUND YELLOW TABLET Side 1: SEROQUEL 100."

pertained to the four pills. Both certificates stated that the pills were "QUETIAPINE." The judge allowed the Commonwealth's motion in limine to take judicial notice, based upon the Physicians' Desk Reference, that the brand name Seroquel is the same as the generic drug quetiapine.

*Discussion.* 1. *The drug certificates.* The defendant argues that the drug certificates were erroneously admitted because their admission violated his rights under the confrontation clause of the Sixth Amendment to the United States Constitution and also because they failed to satisfy statutory admissibility requirements. The introduction of the drug certificates was error. See *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009). Although the Commonwealth questions whether the defendant adequately preserved his confrontation claim, we need not resolve the issue of the appropriate standard of review[3] because we conclude that the error was harmless beyond a reasonable doubt. See *Commonwealth* v. *Mendes*, 75 Mass. App. Ct. 390, 397 (2009), and cases cited.

"The essential question is whether the error had, or might have had, an effect on the jury and whether the error contributed to or might have contributed to the verdicts." *Commonwealth* v. *Bacigalupo*, 455 Mass. 485, 495 (2009), quoting from *Commonwealth* v. *Perrot*, 407 Mass. 539, 549 (1990). *Commonwealth* v. *Tyree*, 455 Mass. 676, 700-704 (2010). Some of the factors to consider include: "(1) the relationship between the evidence and the premise of the defense; (2) who introduced the issue at trial; (3) the weight or quantum of evidence of guilt; (4) the frequency

---

[3]Prior to trial, it appears that the defendant filed a memorandum of law arguing that the certificates did not comply with the admissibility requirements of G. L. c. 111, §§ 12-13, and further, that their admission would violate the defendant's confrontation rights. While the record does not indicate that an accompanying motion was filed, argued, or ruled upon, it does appear that this memorandum was filed on March 7, 2007.

During trial and over objection, the judge admitted the two drug certificates in evidence. Although the defendant objected to the admission of the certificates, the grounds of the objection are not disclosed in the record.

Determining the proper standard of review in this case is further complicated because trial occurred in March, 2007, and the question whether the "clairvoyance exception" applies is currently under review. See *Commonwealth* v. *Connolly*, 454 Mass. 808, 830-831 (2009) (leaving open the issue for future consideration); *Commonwealth* v. *Vasquez*, 75 Mass. App. Ct. 446, 462 (2009) (reporting the issue to the Supreme Judicial Court).

of the reference; and (5) the availability or effect of curative instructions." *Commonwealth* v. *Isabelle*, 444 Mass. 416, 419 (2005), quoting from *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-697 (1983).

We begin the analysis with the third and, for this case, the most important factor identified in *Isabelle* and *Mahdi*: the other evidence of guilt. "Proof that a substance is a particular drug need not be made by chemical analysis[4] and may be made by circumstantial evidence." *Commonwealth* v. *Dawson*, 399 Mass. 465, 467 (1987). In this case, there is overwhelming circumstantial evidence that the pills were quetiapine, a class E controlled substance. First, as discussed *infra*, the judge properly took judicial notice that the brand name Seroquel is the equivalent of the generic drug quetiapine. Second, most of the pills were discovered in a prescription bottle bearing the defendant's name and the name "Walgreens"; the detectives had observed the transaction in front of a Walgreens store. Third, the pills in the bottle and the four pills recovered from the other individual are identical; each pill is individually stamped with the word "Seroquel," and each matches the pill bottle label, Seroquel.[5]

The defendant's statement to the detectives that the other individual "gave [him] ten bucks for the pills" is further evidence of guilt. See *Commonwealth* v. *Rodriguez*, 75 Mass. App. Ct. 235, 242 (2009) (admitting to drug dealing is significant circumstantial evidence). All of these inculpatory factors weigh heavily in favor of a finding of harmless error. See *id.* at 243.

The first factor set forth in *Isabelle* is the consideration of the premise of the defense. The defendant did not contest the composition of the pills but instead focused almost exclusively on challenging the school zone violation. See *ibid.* (trial defense that the drugs were only for personal use "supports a finding of harmless error"). However, we do not give this factor much weight because, at the time of trial, Massachusetts law, specifically *Commonwealth* v. *Verde*, 444 Mass. 279, 283 (2005), provided that admission of the certificates without an opportunity

---

[4]The certificates did not state that any chemical analysis of the pills had been undertaken. See note 7, *infra*.

[5]Not only did Detective Boyle testify to these observations, but the jury also had the opportunity to examine both sets of pills and the pill bottle, all of which were admitted in evidence.

to cross-examine the examiner did not violate a defendant's constitutional rights. See *Commonwealth* v. *Tyree, supra* at 704; *Commonwealth* v. *Hollister,* 75 Mass. App. Ct. 729, 732 (2009).

We next consider the frequency of the references to the improperly admitted certificates, factor four in *Isabelle.* The Commonwealth offered them during its case-in-chief, and Detective Boyle read them into the record. However, neither party subsequently referred to them during the presentation of evidence, and the Commonwealth did not refer to them during closing. In his closing, defense counsel merely asked the jury to inspect them "very closely." Contrast *Commonwealth* v. *Ware, ante* 53, 57-58 (2009) (prosecutor relied on certificate in closing argument). The jury instructions did not mention the certificates at all. We are confident that the sparse "references to different drug certificates are neutralized by the overwhelming evidence of . . . distribution [of a class E controlled substance] in this case." *Rodriguez, supra* at 244.[6]

In these circumstances,[7] it is fair to conclude that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* at 241, quoting from *Commonwealth* v. *Perez,* 411 Mass. 249, 260 (1991).[8]

2. *Judicial notice.* The Commonwealth was required to prove that the pills labeled Seroquel had the same composition as the generic substance quetiapine, a class E controlled substance. Prior to trial, the Commonwealth filed a motion in limine asking the judge to take judicial notice of this fact based upon the

---

[6]As far as the second factor is concerned, it is true that the Commonwealth offered the certificates at trial. However, "it did so in a legal landscape where that was permissible [and t]hus, we consider it . . . unrealistic and unfair to place much weight on [that] fact." *Commonwealth* v. *Hollister, supra* at 732.

Similarly, the last factor concerning the availability of curative instructions does not have much application in this case. At the time of trial, the admission of the certificates was not error, and defense counsel should not be expected to request, nor should the trial judge be expected to deliver, a "curative" instruction. See *Commonwealth* v. *Madera, ante* 154, 157 n.6 (2010).

[7]It is noteworthy that the certificates in this case merely identified the pills as quetiapine. The certificates indicated that the tablets had been identified "by appearance and labeling." There is no mention of chemical analysis.

[8]In light of our conclusion that the erroneous admission of the drug certificates was harmless beyond a reasonable doubt, we need not address the defendant's assertion that the certificates failed to meet the statutory admissibility requirements set forth in G. L. c. 111, §§ 12, 13.

Physicians' Desk Reference (PDR). The judge allowed this motion.

"Matters are judicially noticed only when they are indisputably true." *Nantucket* v. *Beinecke,* 379 Mass. 345, 352 (1979). Matters of common knowledge may be judicially noticed. *Ibid.* Additionally, facts which are "a subject of generalized knowledge readily ascertainable from authoritative sources [are] . . . appropriate for judicial notice." *Commonwealth* v. *Green,* 408 Mass. 48, 50 n.2 (1990). In this case, the judge did not err in taking judicial notice of the single and indisputable fact that, based upon the PDR, Seroquel is the brand name for the generic drug quetiapine.[9] While this is not a matter of common knowledge, it is readily ascertainable from the PDR and is comparable to a judge taking judicial notice that codeine is a derivative of opium, which was approved in *Commonwealth* v. *Green, supra.*

This case differs from *Commonwealth* v. *Johnson,* 59 Mass. App. Ct. 164, 170 (2003), where a "pill book" purchased from a CVS pharmacy was not considered an appropriate subject for judicial notice because, unlike a pill book, the PDR is a recognized authority.[10] Additionally, this is not a case where a judge improperly took judicial notice of the symptoms or effects of taking a drug. See *Commonwealth* v. *Hartman,* 404 Mass. 306, 313 n.9 (1989) (judicial notice not appropriate for "[t]he symptoms of insulin shock"). Instead, the judge simply took judicial notice that Seroquel is the brand name for the generic drug quetiapine. This was an appropriate exercise of judicial notice.[11]

3. *Jury instructions.* The defendant claims the judge's instruc-

---

[9]See Mass. G. Evid. § 201(b) (2008-2009) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either [1] generally known within the territorial jurisdiction of the trial court or [2] capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned").

[10]While there is little Massachusetts case law on this point, courts in other jurisdictions have observed that the PDR "is a recognized authority in the medical profession." *Gowan* v. *United States,* 601 F. Supp. 1297, 1300 (D. Or. 1985). See *Kollmorgen* v. *State Bd. of Med. Examrs.,* 416 N.W.2d 485, 488 (Minn. Ct. App. 1987) (the PDR "is generally recognized as authoritative"); *Wagner* v. *Roche Labs.,* 671 N.E.2d 252, 256 n.1 (Ohio 1996) ("[t]he PDR is considered an authoritative source for information").

[11]We do not suggest that the PDR may be judicially noticed for other purposes. We hold only that it was properly noticed in this case for the single and limited purpose identified.

tions with respect to the distribution charge do not define the elements of knowingly and intentionally. Defense counsel did not object to the instructions and thus the error, if any, is reviewed under the familiar principles of the substantial risk of a miscarriage of justice standard. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). Because the defendant's knowledge and intent were not live issues at trial, the omission did not create such a risk. See *Commonwealth* v. *Van Winkle*, 443 Mass. 230, 241 (2005); *Commonwealth* v. *Costa*, 65 Mass. App. Ct. 227, 234-235 (2005).

4. *Humane practice instruction.* The defendant next claims that the judge should have granted his request for an instruction on the doctrine of humane practice.[12] In this case, where the voluntariness of the defendant's statement was not a live issue at trial,[13] the judge did not have a "duty to ask the jury to pass on voluntariness." *Commonwealth* v. *Alicea*, 376 Mass. 506, 523 (1978). See *Commonwealth* v. *Anderson*, 425 Mass. 685, 691 (1997) (jury were not compelled to consider the issue of voluntariness because it "was not a live issue at trial; there was no evidence before the jury that could have supported the conclusion that the confessions were not voluntary"). There was no error.

5. *Subsequent offender.* The defendant's final claim is that the judge erred in sentencing him as a subsequent offender without adhering to the two-step procedure mandated by G. L. c. 278, § 11A. The total sentence imposed on the defendant was two years for the school zone offense and one day for the distribution offense on and after the school zone sentence.

We are hampered in our consideration of this claim by a docket and proceedings that do not match up. There is no ques-

---

[12]"Under the Commonwealth's 'humane practice,' if the voluntariness of a defendant's statement is a live issue at trial, the judge must instruct the jury that the Commonwealth has the burden of proving beyond a reasonable doubt that the statement was made voluntarily and that the jurors must disregard the statement unless the Commonwealth has met its burden." *Commonwealth* v. *Caillot*, 454 Mass. 245, 263-264 (2009), quoting from *Commonwealth* v. *Cryer*, 426 Mass. 562, 571 (1998).

[13]In closing, defense counsel did ask the jury to find that the defendant's statement that "[h]e gave me ten bucks for the pills," was involuntary. However, closing arguments are not evidence, see *Commonwealth* v. *Kozec*, 399 Mass. 514, 517 (1987), and there was no evidence whatsoever that the defendant's statement was involuntary.

tion that the jury were instructed and entered a guilty verdict on the offense of distribution of a class E substance. The judge instructed on this offense, and there is appropriately no mention in his instructions of a subsequent offense. Similarly, the verdict of guilty was for the crime of distribution of a class E substance, without any reference to a subsequent offense. After the jury trial, there were no proceedings of any kind on the subsequent offense portion of the distribution count of the complaint. Nonetheless, the docket indicates that the defendant was found guilty of distribution of a class E substance as a subsequent offender.

The Commonwealth does not dispute that the defendant was entitled to a jury or jury-waived trial on the subsequent offender portion of the distribution count of the complaint. See G. L. c. 278, § 11A. Instead, the Commonwealth contends that the defendant was sentenced under only the distribution portion of the count. There was an unrecorded sidebar conference immediately prior to sentencing, and the Commonwealth implies that the decision not to try or to sentence the defendant under the subsequent offender portion of the complaint was discussed at that conference. If that was indeed what happened, the docket, nonetheless, unfortunately indicates that the conviction for distribution was for a subsequent offense. As there were no proceedings of any type on any subsequent offense, it was error not to delete any reference to a subsequent offense from the record. Therefore, the portion of the judgment that states that the defendant was found guilty of a subsequent offense of distribution of a class E controlled substance must be vacated.

*Conclusion.* Insofar as the judgment on count one reflects that the defendant is guilty of distribution of a class E substance as a subsequent offender, that portion of the judgment is vacated. The docket is to be corrected to reflect that the verdict of guilty was for distribution of a class E substance. Otherwise, the judgments, for distribution of a class E substance and for distribution within a school zone, are affirmed.

*So ordered.*