NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-229                                        Appeals Court

COMMONWEALTH  vs.  DOLORES G. PAINE.


No. 13-P-229.

Essex.      February 4, 2014. - October 2, 2014.

Present:  Cohen, Brown, & Rubin, JJ.


Controlled Substances.  Evidence, Expert opinion, Certificate of
     drug analysis.  Witness, Expert.



Indictments found and returned in the Superior Court
Department on February 4, 2009.

The cases were tried before Garry V. Inge, J.


Kathleen S. Lucey for the defendant.
Catherine P. Sullivan, Assistant District Attorney, for the
Commonwealth.


COHEN, J.  After a jury trial in the Superior Court, the

defendant was convicted of two counts of possession of a class E

substance, in violation of G. L. c. 94C, § 34.[1]  The charges

arose from the seizure by police of three tablets found in a

_____

[1] The defendant also was convicted of trafficking in
cocaine.  She does not challenge that conviction on appeal.

container in the defendant's purse.  On appeal, the defendant argues that the evidence was insufficient to establish that the tablets contained cyclobenzaprine and quetiapine, as alleged in the indictments.  Because we agree that there was insufficient proof of the composition of the tablets, we reverse.

1.  Background.  Viewed in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the relevant evidence may be summarized as follows. On October 31, 2008, at about 3:00 A.M., a State police trooper observed a pickup truck parked outside the designated parking area of a rest area on Route 495 in Haverhill.  The trooper approached in his cruiser and shined a spotlight into the cab of the truck.  Upon seeing the trooper, the driver (later identified as the defendant) and her two passengers began moving around.  The trooper approached on foot, shined his flashlight into the truck, and noticed what appeared to be a crack pipe on the lap of one of the passengers.  The trooper ordered the occupants out of the truck and, after finding a ball of what appeared to be cocaine, placed all three individuals under arrest.

When the trooper returned to the State police barracks, he inventoried the contents of the defendant's purse and discovered a pill bottle with a prescription label bearing the defendant's name and describing the contents as Oxycontin.  Inside the pill

bottle were an orange pill, two or three white pills,[2] and two yellow pills.  The trooper secured the bottle and the pills and placed them, along with other drug items seized from the vehicle, in the drug locker at the barracks.  They later were submitted for analysis to the State police crime laboratory in Sudbury.

At trial, a laboratory chemist, Jessica Brown, appeared as an expert witness for the Commonwealth.  In her testimony, she described the laboratory protocols for analyzing tablets, as opposed to powdered drugs, as follows:

> "For tablets, it actually depends on what type of tablet as far as the testing that we do.  We have a program resource that is called Micromedex and it is a database for the imprints and color, size, shape and what that type of tablet is for, in essence, all of the manufactured prescription tablets that are out there.  So the first step in our tablet protocol is to reference that database to see what the imprints indicate the tablet is.  If that tablet is deemed a prescription tablet but not classified in the Massachusetts General Laws, then we are, by our protocols, allowed to report that tablet based on its markings and appearance.  For example, the imprint, say the letter "M" or the color yellow and also the shape, if it's round.  Based on all of those, if they are consistent with the reported imprint or markings, appearance of the manufacturer, then we can call it that item.  For tablets that are classified higher in the General Laws [than the allegedly class E tablets at issue here], we actually perform testing on those types of tablets."[3]

---

[2] The trooper testified that two white pills were seized; the corresponding drug certificate refers to "three white round tablets."

[3] The record does not disclose why the laboratory protocols allowed class E tablets to be identified by sight, while higher classes of tablets were required to undergo chemical testing.

Brown indexed the tablets seized from the defendant using the Micromedex resource and determined that the yellow tablets "contain[ed] cyclobenzaprine based on the manufacturer's information" and that the white tablets had "imprints and color, size, [and] shape [that] were consistent with that of quetiapine[,] which is more commonly known as Seroquel."[4]  Brown then generated drug certificates for each of the two sets of tablets.  The certificates, which were introduced in evidence

_____

In March, 2014, after the oral argument in this case, the Commonwealth submitted a letter calling our attention to the newly issued report by the Massachusetts Inspector General, entitled "Investigation of the Drug Laboratory at the William A. Hinton State Laboratory Institute 2002-2012" (report).  Commendably, the Commonwealth pointed out a portion of the report criticizing the practice of identifying class E substances by means of a visual inspection of the sample's appearance and labeling.  The report, which can be found at http://www.mass.gov/ig/publications/reports-and-recommendations/2014/investigation-of-the-drug-laboratory-at-the-william-a-hinton-state-laboratory-institute-2002-2012.pdf [http://perma.cc/CFJ6-B5ZD], states at page 37, note 80, that "[a]ccording to SWGDRUG recommendations, identification of an unknown substance based solely on pharmaceutical identifiers does not satisfy minimum standards for forensic identification." SWGDRUG stands for the "Scientific Working Group for the Analysis of Seized Drugs," which was founded under a different name in 1977, by the United States Drug Enforcement Administration and the Office of National Drug Control Policy to develop accepted minimum standards of educational and professional development, quality assurance, and drug identification methods for forensic drug analysis practitioners. See report, supra at 27.

[4] We may infer from the record that the single other pill seized from the defendant contained oxycodone, for which the defendant had a prescription.  The defendant was charged with possession of oxycodone, but a nolle prosequi entered as to that charge on the first day of trial.

state, as to each set of tablets, that they are "consistent in markings and appearance" with "a Class E Controlled Substance," respectively, quetiapine and cyclobenzaprine.

2.  Discussion.  "In a case involving a narcotics offense, the Commonwealth must prove beyond a reasonable doubt that the substance at issue '"is a particular drug" because such proof is an element of the crime charged.'"  Commonwealth v. MacDonald, 459 Mass. 148, 153 (2011), quoting from Commonwealth v. Vasquez, 456 Mass. 350, 361 (2010).  The Commonwealth cannot meet this burden without establishing that the substance is, in fact, the drug alleged, as distinct from a different or counterfeit drug. See Commonwealth v. Vasquez, supra.  "Proof that a substance is a particular drug need not be made by chemical analysis and may be made by circumstantial evidence."  Commonwealth v. Dawson, 399 Mass. 465, 467 (1987).  However, "it would be a rare case in which a witness's statement that a particular substance looked like a controlled substance would alone be sufficient to support a conviction."  Ibid.[5]

_____

[5] But see Commonwealth v. MacDonald, 459 Mass. at 156-158 & n.5, and 159 n.8, in which the Supreme Judicial Court concluded that the opinion testimony of a qualified expert, based upon his visual and tactile inspection of bags alleged to contain marijuana, sufficed to establish that the substance was, in fact, marijuana.  Central to the court's analysis was that marijuana, which is composed of dried leaves, stems, and seeds of a plant, is different from compounds, extracts, or preparations.  The court also noted that the Commonwealth would have presented "better evidence" if, in addition, the expert had

Where pharmaceutical drugs are concerned, in the absence of chemical analysis, we have found the Commonwealth's evidence sufficient to sustain its burden of proof only where evidence derived from visual inspection was supplemented with other circumstantial evidence probative of the identity of the drug. In Commonwealth v. Alisha A., 56 Mass. App. Ct. 311, 313-315 (2002), we rejected the juvenile's claim that there was insufficient evidence that the pills she distributed were the class C substance Klonopin. Witnesses described the pills' appearance -- their color, shape, and the presence of a hollowed out "K" in the middle of each tablet; and a physician testified that Klonopin pills are usually identified by a "K" marked on them. In addition, however, there was other strong circumstantial evidence that the pills were, in fact, Klonopin. The juvenile had told her schoolmates that she would be bringing Klonopin pills into school to distribute. On the following day, she arrived, displayed the pills, and gave about fifteen of them to a schoolmate who, after ingesting two tablets, was observed to be "under the influence." Of particular significance, on the same day that the juvenile brought the pills to school, the juvenile's mother, who had a prescription for Klonopin, noticed that she was missing seventeen pills. Id. at 312-315.

opened the bags containing the substance and smelled it. Id. at 158 n.7.

In an analogous vein, in Commonwealth v. Greco, 76 Mass.
App. Ct. 296, 298-300 (2010), we affirmed the defendant's
conviction of distributing the class E substance quetiapine,
despite the erroneous admission of drug certificates.  See
Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).  There was
evidence that the pills in question were yellow and stamped with
the word "Seroquel," the brand name equivalent of the generic
drug quetiapine.  Commonwealth v. Greco, supra at 297, 299.
However, it also was established that two detectives had
observed the defendant standing in front of a Walgreens
pharmacy, removing pills from a large prescription bottle, and
handing them to another individual.  When questioned, the
defendant stated that the other individual had given him "ten
bucks for the pills."  The bottle, which was introduced in
evidence, bore the defendant's name and the logo "Walgreens."
Ibid.[6]

In both these cases, the jury readily could infer that the
pills were obtained from a pharmacy pursuant to a prescription,
and therefore were authentic.  Here, however, apart from the
chemist's identification of the substances from reference to the

---

[6] In Commonwealth v. Nelson, 460 Mass. 564, 574-575 (2011),
involving similar but weaker circumstantial evidence, the
Supreme Judicial Court distinguished the Greco case and held
that the circumstantial evidence was not sufficient to render
the erroneous admission of a drug certificate identifying pills
as trazodone harmless beyond a reasonable doubt.

Micromedex resource and the corresponding certificates so indicating, no other evidence was introduced at trial that could aid the trier of fact in verifying the genuineness of the pills seized.  Furthermore, although drug certificates ordinarily would constitute prima facie evidence of the composition of a drug, see G. L. c. 22C, § 39, the certificates in this case state only that "[t]he tablets were consistent in markings and appearance" with a class E substance.  The certificates' further reference to G. L. c. 22C, § 39, in particular, that "[a] certificate by a chemist of the department of the result of an analysis made by him of a drug furnished him by a member of the state police, signed and sworn to by such chemist, shall be prima facie evidence of the composition, quality and when appropriate, net weight of any mixture containing such drug," does not cure the inadequacy where it is clear from the face of the certificates that the chemist's "analysis" was no more than a visual inspection.  Without actual chemical analysis or additional circumstantial evidence of the authenticity of the tablets, the Commonwealth failed to prove an essential element of its case, i.e., that the drugs forming the basis of the charges against the defendant were, in fact, cyclobenzaprine and quetiapine.

3.  Conclusion.  As to the indictments charging the defendant with possession of a class E drug, the judgments are

reversed, the verdicts are set aside, and a judgment of not guilty is to be entered for the defendant on each indictment.

<u>So ordered</u>.