APPEALS COURT 
 
 COMMONWEALTH vs. AMANDA K. BERUBE[1]

 
 Docket:
 24-P-121
 
 
 Dates:
 November 13, 2024 – March 24, 2025
 
 
 Present:
 Blake, Neyman, & Grant, JJ.
 
 
 County:
 Essex
 

 
 Keywords:
 Controlled Substances. Narcotic Drugs. Evidence, Hearsay, Authentication, Photograph. Nurse. Pharmacy. Hospital. Practice, Criminal, Hearsay, Required finding.
 
 

             Complaint received and sworn to in the Newburyport Division of the District Court Department on March 31, 2023.
            The case was tried before Peter F. Doyle, J.
            Alexander McIsaac for the defendant.
            Catherine Langevin Semel, Assistant District Attorney, for the Commonwealth.
            GRANT, J.  The defendant, Amanda K. Berube, argues that the testimony of two witnesses that a vial found in her possession bore a label imprinted with the words "morphine" and "four milligrams" was impermissible hearsay resulting in prejudicial error.  In the circumstances of this case, we conclude that the testimony was admissible, and in any event cumulative of other evidence.  We also conclude that the evidence was sufficient to prove that what the vial contained was morphine.  Accordingly, we affirm the defendant's conviction for possession of a class A substance, G. L. c. 94C, § 34.
            Background.  In January 2022, the defendant was working at a hospital on a contract basis as a nurse.  At the hospital, nurses obtained medication from an automated dispenser by entering the nurse's own username and code and selecting the patient's name and medication; the dispenser then produced the dosage that a doctor had prescribed for that patient.  Morphine, a class A substance, was dispensed in plastic packaging that contained a pre-filled glass vial bearing a label affixed by the manufacturer.  Each vial had a green lock that would attach to an intravenous port.  After administering the contents of a vial to a patient, the nurse would discard the empty vial into a locked bin.  If the entire contents of a vial were not used, the nurse was supposed to empty the unused contents into a secure container and submit a waste report witnessed by another nurse.
            On January 25 and 26, 2022, the defendant worked the overnight shift in the emergency room.  At 11:47 P.M. on January 25, she obtained from the medication dispenser a four-milligram vial of morphine prescribed for a certain patient.  The patient's medical records showed that the defendant recorded that, on a scale from one to ten, the patient described his pain as a "ten."  Those records also showed that the defendant scanned the bar code on the patient's wristband and then administered the morphine intravenously to the patient, finishing at 11:51 P.M.
            After her shift ended at 7 A.M. on January 26, the defendant met with the emergency department manager, Janet Ray, in Ray's office.  About twenty minutes after the defendant had left her office, Ray noticed a purse on the chair where the defendant had been sitting.  Ray unzipped the purse and found a glass vial bearing a label imprinted with the words "morphine" and "four milligrams."  It was the same type of vial as the vials of morphine produced by the hospital's dispenser system, but was missing its outer plastic packaging and green lock.  The vial contained about two milligrams of a liquid that was clear, like morphine.  Ray showed the vial to Peter Tura, the director of the emergency department.  Tura turned the vial over to the pharmacy director, who obtained records of the medication dispenser showing that during her shift that had ended that morning, the defendant had obtained the four-milligram vial of morphine for administration to the patient.  The defendant had not submitted any waste report for unused morphine.
            The next day, January 27, Ray and several other hospital administrators met with the defendant.  Ray showed the defendant the purse and asked if it was hers, and the defendant acknowledged that it was.  Ray told the defendant that inside the purse she had found a vial labelled morphine.  The defendant said that the vial was not hers, she did not know how it got into her purse, and someone else could have put it there; asked if she had conflicts with any of her coworkers, she said no.  Asked if she had administered morphine to any patient on January 25 or 26, the defendant said she had, and she had given the entire dose to the patient.  She described the patient as "drug seeking," and said he had asked her to "push it slowly" when administering the morphine.[2]
            The pharmacy director placed the vial in the hospital's pharmacy vault and never saw it again.  The vial was not admitted in evidence, and the substance it contained was never tested.  Instead, the Commonwealth introduced in evidence a photograph depicting a different vial of morphine as it appeared when produced from the hospital's medication dispenser.  Ray, Tura, and the pharmacy director each testified that the vial from the defendant's purse looked like the one depicted in the photograph, except it was missing the outer plastic packaging and the green lock that would attach to a port.  That photograph of the similar vial depicts the printed words "Morphine Sulfate" and "4 mg/mL."  The defendant did not object, either to the photograph or to the witnesses' testimony that the vial from the defendant's purse looked like the one depicted in the photograph.
            A jury convicted the defendant of possession of a class A substance, and she now appeals.
            Discussion.  1.  Hearsay.  The defendant argues that the judge should not have permitted Ray and Tura to testify that the vial found in the defendant's purse bore a label imprinted with the words "morphine" and "four milligrams."  During Ray's testimony, defense counsel objected, saying, "She's about to testify to what was written on this vial.  That's hearsay," and during Tura's testimony lodged a similar objection.  Without further discussion, the judge overruled both objections.  We review those rulings for prejudicial error.  See Commonwealth v. DePina, 75 Mass. App. Ct. 842, 850 (2009).  In determining whether the judge erred in admitting the testimony, we consider whether he abused his discretion by making a "clear error of judgment in weighing the [relevant] factors" and whether his "decision falls outside the range of reasonable alternatives."  Commonwealth v. Chalue, 486 Mass. 847, 875 (2021), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).
            Hearsay is an out-of-court statement of a person that is admitted for its truth.  See Commonwealth v. Souza, 494 Mass. 705, 718 (2024) (computer-generated record created without human participation not statement of person; not hearsay).  See also Mass. G. Evid. § 801(a)-(c) (2024).  To begin, we doubt that the words printed on the label affixed to the vial of morphine found in the defendant's purse amounted to a "statement" by a "person."  The pharmacy director testified that the labels on the morphine vials produced from the hospital's dispenser had been affixed by the vials' manufacturer.  Both Ray and the pharmacy director testified that a nurse would scan the bar code on the label to "make sure it's the correct medication" matching the patient's prescription.[3]  Thus the "declarant" of the words printed on the label was the pharmaceutical company that manufactured the vial.
            Manufacturer's labels affixed to items in evidence have long been held by Massachusetts courts not to constitute hearsay.  "Labels and brand names have been held admissible to prove, e.g., the resident port of a ship; . . . the source of beer in a barrel;. . . the contents of a box; . . . and the contents of a package" (citations omitted).  Commonwealth v. Clark, 363 Mass. 467, 471 (1973).  See, e.g., Commonwealth v. Sellon, 380 Mass. 220, 230 & n.16 (1980) (bottle labeled "Liquid Drano" admitted in evidence, and absence of chemical testing of contents went to weight, not admissibility); Commonwealth v. Collier, 134 Mass. 203, 205-206 (1883) (brewer's label identifying contents of barrel as "Bavarian hop beer" improperly excluded).  See also Commonwealth v. Nicholson, 58 Mass. App. Ct. 601, 605 (2003) ("The liquor bottles, being visibly connected as elements of proof of the [operating while under the influence of alcohol (OUI)] charge . . . were properly taken up and preserved by the police as evidence"); Commonwealth v. Sudderth, 37 Mass. App. Ct. 317, 318 (1994) (evidence of OUI included police testimony about beer cans in car).  Thus we have no doubt that, if the vial from the defendant's purse had been admitted in evidence, the words on its label would not have been hearsay.  See Commonwealth v. Caruso, 476 Mass. 275, 286 n.7 (2017) ("The introduction of physical items does not constitute hearsay").[4]
            Even where the label is not admitted in evidence, the Supreme Judicial Court has held that a witness's testimony about the contents of the label was not inadmissible hearsay.  In Clark, 363 Mass. at 471, a witness testified that the defendant had lent him a gun imprinted with the number "22"; we infer from the case that the gun was not admitted in evidence.  The court rejected the argument that the witness's testimony about the label was inadmissible hearsay, ruling that it was "competent" to prove the caliber of the gun.  Id.  Here, where the photograph of the similar vial was admitted in evidence, the witnesses' testimony to the words on the label on the vial in the defendant's purse was properly admitted.  Cf. Commonwealth v. Housewright, 470 Mass. 665, 678-679 (2015), quoting Commonwealth v. Luna, 46 Mass. App. Ct. 90, 93 (1998) ("Where for whatever reasons original items of physical evidence cannot be produced, substitutes similar to the originals have often been received as exhibits . . . to illustrate and corroborate testimony in which the originals figured").
            As in Clark, 363 Mass. at 471, though the vial from the defendant's purse was not in evidence, witnesses could permissibly testify to their observations of it, including that the words "morphine" and "four milligrams" were printed on its label.  Importantly, the label was for a controlled substance, which is subject to regulations regarding its labeling.  See G. L. c. 94C, § 1 (defining prescription drug to require specific wording on label); 21 U.S.C. § 353(b)(4)(A) (label must state "Rx only").  Even more importantly, circumstantial evidence established that the vial in the defendant's purse came from the hospital, where administration of controlled substances is regulated by statutes.  See G. L. c. 94C, § 9 (a) (exempting from criminal prosecution administration of controlled substances by nurse under direction of physician); G. L. c. 94C, § 1 (defining medication order as "an order for medication entered on a patient's medical record maintained at a hospital . . . that is dispensed only for immediate administration at the facility to the ultimate user by an individual who administers such medication under this chapter").  The jury could also consider the testimony of Ray and the hospital pharmacist that, in administering medication obtained from the secure dispenser, nurses rely on manufacturers' labels and bar codes.  Cf. Commonwealth v. Johnson, 59 Mass. App. Ct. 164, 167-169 (2003) (second-level hearsay in medical record admissible if it was of nature routinely relied on by professionals in field).  In these circumstances, the witnesses' testimony about the words on the vial from the defendant's purse implicated concerns of authentication rather than hearsay.  See Souza, 494 Mass. at 718, citing Commonwealth v. Thissell, 457 Mass. 191, 197 n.13 (2010).
            Ample evidence authenticated the vial from the defendant's purse as originating from the hospital's dispenser, therefore permitting the witnesses to testify that the label on it was imprinted with the words "morphine" and "four milligrams."  The records of the medication dispenser showed that the defendant had retrieved four milligrams of morphine during her shift that ended just before the vial was found.  The patient's medical records, admitted in evidence pursuant to G. L. c. 233, § 79, showed that the defendant reported that she had administered to him the entire four-milligram dose.  Ray's testimony about the procedure by which nurses were supposed to dispose of the unused portion of a dosage pointed to the possibility that the defendant could have simply slipped the half-full vial into her purse.  Ray and Tura testified that the vial found in the defendant's purse looked like the vials from the hospital's dispenser, including the one depicted in the photograph that was admitted without objection.  Ray testified, without objection, that when she met with the defendant about finding the purse, she told the defendant that the vial inside it was labelled "morphine."[5]  From that evidence, "the jury readily could infer that the [medication was] obtained from a pharmacy pursuant to a prescription, and, therefore, [was] authentic."  Commonwealth v. Paine, 86 Mass. App. Ct. 432, 436 (2014), citing Commonwealth v. Greco, 76 Mass. App. Ct. 296, 298-299 (2010) (where police saw defendant in front of Walgreens pharmacy selling pills from bottle labeled with Walgreens logo, evidence sufficient to prove pills were controlled substance, even absent certificate of analysis).
            In Commonwealth v. Cole, 473 Mass. 317, 321-322 (2015), abrogated on other grounds by Commonwealth v. Wardsworth, 482 Mass. 454, 464 n.18 (2019), a patient who met the defendant's description but gave a different name was treated at a hospital for a knife wound to his thigh.  A nurse testified at trial, describing her treatment of the patient and relating his statements about how the knife wound had occurred.[6]  Cole, supra at 324.  The defendant argued that the patient's hospital records were inadmissible hearsay because they were not authenticated as relating to the defendant.  The Supreme Judicial Court rejected that argument, holding that "there was sufficient evidence for the jury to reasonably infer that the defendant was the patient who was treated by the nurse."  Id.  Just as the evidence in Cole was sufficient to authenticate that that patient was that defendant, so, too, the evidence here was sufficient to authenticate the vial found in the defendant's purse as the one she had obtained from the hospital dispenser for administration to the patient.
            The testimony of Ray, Tura, and the pharmacy director about their firsthand observations of the label on the vial was not hearsay.  See Commonwealth v. Stroyny, 435 Mass. 635, 642 (2002).  Those three witnesses were available for cross-examination about their memories of the label and whether it was similar to the one depicted in the photograph.  Defense counsel elicited from them that, unlike the vial from the defendant's purse, the one depicted in the photograph had the plastic covering and the green cap, and that the bar code on each four-milligram vial of morphine was not unique to that vial.
            In any event, the witnesses' testimony that the words "morphine" and "four milligrams" were printed on the label on the vial found in the defendant's purse was cumulative of other evidence that was admitted without objection.  The photograph of the similar vial depicted a label with the printed words "Morphine Sulfate" and "4 mg/mL."  Ray, Tura, and the pharmacy director each testified that the vial from the defendant's purse looked like the one in the photograph.  In those circumstances, even if it was error to admit the testimony about what was printed on the label, something we do not conclude, it was nonprejudicial.  See Laramie v. Philip Morris USA Inc., 488 Mass. 399, 416 (2021) (government reports recounting consumers' responses to surveys about cigarette labels contained multiple level hearsay but were cumulative of other evidence).[7]
            2.  Sufficiency of evidence.  The defendant argues, as she argued in her motion for a required finding, that the evidence was insufficient to prove that the substance in the vial found in her purse was morphine.  We are not persuaded.
            "We review the denial of a defendant's motion for a required finding of not guilty to determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Commonwealth v. Ramos-Cabrera, 486 Mass. 364, 366-367 (2020), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  "Proof that a substance is a particular drug need not be made by chemical analysis and may be made by circumstantial evidence."  Commonwealth v. Dawson, 399 Mass. 465, 467 (1987).
            We conclude that the evidence permitted the jury to infer that the substance in the defendant's vial was morphine.  That vial looked like the vials of morphine dispensed by the hospital.  Just over seven hours before she left her purse in Ray's office, the defendant had obtained from the hospital's medication dispenser a four-milligram vial of morphine.
            As discussed, testimony that the words "morphine" and "four milligrams" were printed on the vial's label was circumstantial evidence tending to prove that the substance inside was morphine.  See Commonwealth v. Alisha A., 56 Mass. App. Ct. 311, 313-314 (2002) (proof sufficient that pills were Klonopin, where juvenile's mother testified that her prescribed Klonopin pills were missing, witness saw letter "K" stamped on pills, and doctor testified that was how Klonopin was labeled).  See also Greco, 76 Mass. App. Ct. at 298-299.  Contrast Commonwealth v. Nelson, 460 Mass. 564, 574-575 (2011) (absent improperly admitted drug certificate, evidence insufficient to identify white pills in prescription bottle labeled "trazodone").
            Ray's testimony that the clear liquid in the vial looked like the morphine she had administered in her thirty-five years as a nurse added to the quantum of evidence, although "it would be a rare case in which a witness's statement that a particular substance looked like a controlled substance would alone be sufficient to support a conviction."  Commonwealth v. MacDonald, 459 Mass. 148, 154 (2011), quoting Dawson, 399 Mass. at 467.
            Finally, the defendant's statements about administering morphine to the patient, including that she recorded his pain level as a "ten" and told the hospital administrators that he was "drug seeking," added to the proof that the vial in her purse contained morphine.  See MacDonald, 459 Mass. at 158-159 (after police saw defendant exchange item with driver of red car, defendant's denial "goes to the identity of the substance").
Judgment affirmed.
 
footnotes

 
            [1] As is our custom, we spell the defendant's name as it appears in the complaint.
            [2] Ray explained that a patient who "has had it before and is very sensitive to it" might ask for morphine to be administered slowly.
            [3] We do not reach the question whether the evidence that the label was affixed by the manufacturer and bore a bar code was enough to prove that the words on the label were computer-generated.  See Commonwealth v. Royal, 89 Mass. App. Ct. 168, 171-172 (2016) (discussing difference between computer-generated and computer-stored records).
            [4] Other States' courts have concluded that a hearsay exception should apply to labels on prescription medications found by police in a defendant's possession.  See State v. Guerra, 169 Idaho 486, 500-501 (2021); State v. Hill, 2018-Ohio-67, ¶ 27 (Ct. App.).  Some States' courts have found such a hearsay exception to apply to labels on over-the-counter medication found by police in a defendant's possession.  See Brand v. State, 941 So. 2d 318, 321-322 (Ala. Crim. App. 2006); Burchfield v. State, 892 So. 2d 191, 198 (Miss. 2004); State v. Heuser, 661 N.W.2d 157, 163-165 (Iowa 2003).  We need not reach that issue here, where the evidence authenticated the vial in the defendant's purse as originating from the hospital.
            [5] The defendant did object to Ray's testimony that the clear liquid in the vial was morphine, and the judge sustained the objection.
            [6] Because of a suggestive identification procedure, the nurse was precluded from identifying the defendant as the patient.  Cole, supra at 322 n.4.
            [7] We do not reach the Commonwealth's argument that the witnesses' testimony about the words on the label was admissible not for its truth, but as nonhearsay "[c]ircumstantial [e]vidence of the [n]ature of a . . . [t]hing," Mass. G. Evid. § 801(c) note, at 196 (2024).  No instruction was given limiting the jury's consideration of the testimony to a nonhearsay purpose.  Beyond that, without deciding the issue, we note that for the statement on the label that the vial contained morphine to be relevant, the jury had to consider it for its truth.  See Smith v. Arizona, 602 U.S. 779, 798 (2024) (substitute drug analyst's testimony about testing analyst's data admitted for truth; otherwise, it would not have supported substitute analyst's opinion).