COMMONWEALTH *vs.* JAMES E. MACDONALD.

Middlesex. December 9, 2010. - March 18, 2011.

Present: IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Controlled Substances. Narcotic Drugs. Evidence,* Expert opinion, Hypothetical
question. *Witness,* Expert. *Practice, Criminal,* Instructions to jury, Request
for jury instructions.

At the trial of a criminal complaint alleging distribution of a Class D substance
(marijuana), and of committing a drug offense near a school, a police offi-
cer's testimony that the substance in clear plastic bags was marijuana was
sufficient to support the defendant's convictions beyond a reasonable
doubt, where, given that the defendant did not contest the officer's qualifica-
tions as an expert, the officer's expertise, together with his testimony
identifying the substance based on its brownish color, the presence of
twigs and seeds, and its feel through the clear plastic bags, provided the
requisite attributes and identifiers. [153-159]
This court declined to require that, at the trial of a criminal complaint alleging
distribution of a Class D substance (marijuana), and of committing a drug
offense near a school, in which the Commonwealth offers the testimony of
a police officer as an expert to prove the identity of the substance in ques-
tion, the judge should instruct the jury to use great caution and care in
evaluating that testimony. [159-161]
At the trial of a criminal complaint alleging distribution of a Class D substance
(marijuana), and of committing a drug offense near a school, no error
arose from the testimony of a nonpercipient expert witness that circumstances
presented in a hypothetical using the facts in evidence were consistent with
a street-level drug transaction. [161-164]

COMPLAINT received and sworn to in the Somerville Division
of the District Court Department on October 11, 2006.

The cases were tried before *Sabita Singh,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Matthew Bové* for the defendant.

*Loretta M. Lillios,* Assistant District Attorney (*Jennifer R.
Handel,* Assistant District Attorney, with her) for the Com-
monwealth.

IRELAND, J. The defendant was convicted of distributing a Class D substance (marijuana), G. L. c. 94C, § 32C (*a*), and of committing a drug offense near a school. G. L. c. 94C, § 32J.[1] The defendant appealed, arguing that the judge erred in denying his motions for required findings of not guilty because the testimony of the Commonwealth's expert was inadequate proof that the substance seized was marijuana. He further urges us to require a cautionary jury instruction where the Commonwealth does not introduce forensic evidence of the chemical composition of a drug, and to prohibit the Commonwealth from using precise facts of a case when it presents a hypothetical to an expert for an opinion whether the facts are consistent with a particular crime. We conclude that, in the specific circumstances of this case, the expert's testimony concerning his examination of the substance at issue was sufficient evidence that it was marijuana. We also decline the defendant's invitation to require a cautionary jury instruction concerning forensic testing or to limit the Commonwealth's use of the facts in evidence in forming a hypothetical. Accordingly, we affirm the defendant's convictions and the denial of his motions for a required finding of not guilty.[2]

*Facts and background.* We present the essential facts the jury could have found, reserving details for our discussion of the issues raised.

On October 7, 2006, at approximately 4 P.M., three plain-clothes police officers, who had experience with narcotics investigations, were in the vicinity of the intersection of Cross Street East and Broadway in the East Somerville section of Somerville. The officers were investigating street-level drug sales because the area had been the site of numerous drug arrests as well as the subject of citizen complaints.

The officers testified to the following. While driving in the area, their attention was drawn to the defendant, who, for ten to twelve minutes, was using a cellular telephone to make calls, while he paced back and forth on a sidewalk along Broadway. The defendant walked across the street and stood near the front

[1]The Commonwealth entered a nolle prosequi on a third offense, conspiracy to violate drug laws, G. L. c. 94C, § 40.

[2]On appeal, the defendant does not challenge his conviction of a drug violation near a school.

door of a fast food restaurant, but his attention was on the restaurant's parking lot. The officers got out of their vehicle and walked to locations near the defendant.

A man driving an Oldsmobile automobile arrived in the parking lot. Immediately after the driver got out of the Oldsmobile, the defendant went over to him and they exchanged greetings for five to six seconds. The driver then went back to his vehicle and leaned inside, after which he walked into the restaurant. The defendant remained near the restaurant and, shortly thereafter, a man driving a red vehicle arrived in the parking lot. The defendant walked over to that vehicle, leaned in the driver's side window, had a conversation of some five to ten seconds with the driver, and exchanged something with him. The red vehicle immediately departed. The defendant then walked back to the Oldsmobile, opened the driver's side door, leaned in and placed something on the seat. Once he emerged from the Oldsmobile, he placed something in his left front pants pocket and began walking away.

Two of the officers stopped the defendant and identified themselves. He denied meeting anyone in a red vehicle. A search of his left front pants pocket produced six twenty dollar bills, but no drugs or drug paraphernalia. The third officer went to the Oldsmobile and observed, in plain view, two clear plastic bags containing what he believed to be marijuana on the driver's seat. There also were the remnants of a burnt marijuana cigarette in the ashtray. The defendant was arrested.

The Commonwealth was allowed to offer the testimony of a nonpercipient expert witness, Sergeant Detective David Montana, to identify the substance the officers seized as marijuana; to describe how drug transactions are carried out at the street level; and to offer an opinion concerning whether a drug transaction had taken place based on facts in evidence posed in the form of a hypothetical question.

At the time of trial, Montana had been a Medford police officer for thirty-nine years and in charge of Medford's drug control unit for twenty years. He had been involved with thousands of narcotics investigations, not only in Medford, but with police departments in surrounding towns, the State police, and the Federal Drug Enforcement Agency. Over the course of his career,

he received extensive training in identifying and detecting drugs by odor, sight, and touch. He conducted undercover surveillance thousands of times, where officers follow a target to determine whom he or she meets and observe the target's mannerisms, habits, and body movements that, to an expert, indicate involvement in drug dealing. Montana had witnessed hundreds of drug sales, and had bought heroin, cocaine, and marijuana dozens of times. By interviewing hundreds of drug dealers, he learned the details of the drug trade, including costs and weights of various drugs and packaging preferences.

Montana testified that, when a drug transaction takes place in broad daylight, the dealer will disguise the transaction by engaging in conversation, masking hand-to-hand transactions as a handshake, or using motor vehicles to bring drugs to the street-level dealer.

Concerning marijuana, Montana testified that he took "courses regarding marijuana" and that it is one of the most popular drugs today. He described the various ways it is prepared for smoking. There are different types of marijuana and most of the marijuana in this area is from Mexico. Marijuana from Canada is of a better quality than marijuana from Mexico because it has a higher concentration of THC (tetrahydrocannabinol) and has no twigs and fewer (or no) seeds. Montana detailed the ways marijuana of varying amounts would be packaged. For street-level sales, marijuana is usually packaged in clear plastic (glassine) bags, that are known as "dime bags" that now cost twenty dollars.[3]

He also testified that a street-level dealer does not carry his entire supply of marijuana with him because he does not want to lose all of it if he is stopped by police. He also does not carry packaging material so that he can argue that he possessed small amounts of a drug for personal use. Instead, using a cellular telephone, the street-level dealer telephones or sends a "text message" to arrange a meeting place as well as to discuss the quantity of drug sought and the selling price with buyers. Motor vehicles are used to bring the drug to the location and leave the area once the deal has taken place. Such middle men

---

[3]The term "dime bag" developed when the same amount of marijuana sold for ten dollars. See, e.g., Commonwealth v. Little, 453 Mass. 766, 770 (2009).

are used "most of the time" in the sale of marijuana. Moreover, the fact that an individual involved in a drug transaction has no paraphernalia to allow ingestion of the drug on his person suggests that the drug is for distribution rather than personal use.

Montana examined the two clear plastic bags of marijuana that were seized from the Oldsmobile and introduced in evidence. The following exchange occurred:

THE PROSECUTOR: "What are you able to tell us [about the two bags]?"

THE WITNESS: "Well, by looking at them and feeling them, I can feel and I can see there's seeds in here. There's some twigs and there's a Glad bag and it's green in color — brown, I should say, in color and to me it looks like marijuana."

THE PROSECUTOR: "What are you basing that opinion on that you believe it to be marijuana?"

THE WITNESS: "The color. Marijuana comes in brown, green and gold. This is brown and I can feel the seeds and I can see the seeds and I can feel the twigs. The packaging, in my training and experience that I have the marijuana that I've been involved in, this is how it is packaged."

THE PROSECUTOR: "When you say seeds, what do you mean by that; can you describe that?"

THE WITNESS: "The seeds — when you grow marijuana you have leaves and then there's the seeds left there. The seeds really don't have any value in them as far as THC in it. The marijuana itself has the value in it."

THE PROSECUTOR: "Are those seeds specific to the drug marijuana?"

THE WITNESS: "Yes, you need the seed to grow the marijuana."

THE PROSECUTOR: "And the ones that you see in that package are they consistent with seeds that you've

seen in marijuana that you've seized in the past?"

THE WITNESS:        "Yes."

He also stated that each bag was worth twenty dollars.

The defendant did not testify. Relevant to the defendant's appeal is his defense that the Commonwealth presented no chemical analysis establishing that the substance Montana examined was marijuana and that Montana was not a percipient witness to the events leading the defendant's arrest.

*Discussion.* 1. *Sufficiency of expert's testimony.* The defendant argues that the judge erred in denying his motions for required findings of not guilty because Montana's testimony that the substance in the clear plastic bags was marijuana was insufficient to support his convictions beyond a reasonable doubt.

In reviewing a motion for a required finding of not guilty, the court must determine whether the Commonwealth's evidence, together with reasonable inferences therefrom, when viewed in a light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged. *Commonwealth* v. *Campbell,* 378 Mass. 680, 686 (1979), and cases cited. "It is sufficient that the evidence permitted the inference which the jury obviously drew against [the defendant]." *Commonwealth* v. *Nelson,* 370 Mass. 192, 203 (1976).

In a case involving a narcotics offense, the Commonwealth must prove beyond a reasonable doubt that the substance at issue " 'is a particular drug' because such proof is an element of the crime charged." *Commonwealth* v. *Vasquez,* 456 Mass. 350, 361 (2010), quoting *Commonwealth* v. *McGilvery,* 74 Mass. App. Ct. 508, 511 (2009). That proof may be made by circumstantial evidence, including the testimony of experienced police officers. *Commonwealth* v. *Cantres,* 405 Mass. 238, 245-246 (1989), quoting *Commonwealth* v. *Dawson,* 399 Mass. 465, 467 (1987) (*Dawson*). An individual's familiarity with the properties of marijuana through past experience coupled with "present observation" of the substance at issue is sufficient to establish its identity. *Commonwealth* v. *Cantres, supra* at 246-247, quoting *United States* v. *Harrell,* 737 F.2d 971, 978-979 (11th Cir.

1984), cert. denied sub nom. *Harig* v. *United States*, 469 U.S. 1164, and cert. denied, 470 U.S. 1027 (1985). However, an officer's opinion as to the nature of the substance must not be conclusory, but must be based on objective criteria as well as on sufficient training or experience. See, e.g., *Commonwealth* v. *Charles*, 456 Mass. 378, 381-382 (2010) (where testimony of officers with no specialized training or experience with narcotics investigation was conclusory and equivocal concerning composition of substance at issue, it was insufficient to overcome prejudice caused by erroneous admission of certificates of drug analysis in violation of defendant's constitutional right to confrontation). In addition, although circumstantial evidence is sufficient to establish the composition of a substance, this court stated in *Dawson, supra* at 467, a case involving the identification of cocaine, that "it would be a rare case in which a witness's statement that a particular substance looked like a controlled substance would alone be sufficient to support a conviction." In *United States* v. *Harrell, supra,* the United States Court of Appeals for the Eleventh Circuit stated: "Identification of a controlled substance does not require direct evidence if available circumstantial evidence establishes its identity beyond a reasonable doubt. Such evidence can include lay experience based on familiarity through prior use, trading, or law enforcement; a high sales price; on-the-scene remarks by a conspirator identifying the substance as a drug; and behavior characteristic of sales and use such as testing, weighing, cutting and peculiar ingestion." *Id.* at 978. We have cited the *Harrell* case with approval. See, e.g., *Commonwealth* v. *Cantres, supra* at 246-247; *Dawson, supra* at 467.[4]

Before addressing the substance of the defendant's arguments, we note that the defendant's trial was held three weeks after the United States Supreme Court decision in *Melendez-*

---

[4]Other circuit courts of the United States Court of Appeals have indorsed the holding in *United States* v. *Harrell*, 737 F.2d 971, 978-979 (11th Cir. 1984), cert. denied sub nom. *Harig* v. *United States*, 469 U.S. 1164, and cert. denied, 470 U.S. 1027 (1985). See, e.g., *United States* v. *Walters*, 904 F.2d 765, 770 (1st Cir. 1990), discussing cases from other circuit courts of the United States Court of Appeals (testimony of cocaine user and percipient witness to defendant's sales of cocaine sufficient evidence that substance was cocaine).

*Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532, 2542 (2009) (*Melendez-Diaz*), which held that a certificate of drug analysis is testimonial and that its admission, unaccompanied by the testimony of the analyst who performed the testing, violated a defendant's right to confrontation. Here, the Commonwealth had such a certificate, but did not seek to introduce it in evidence, representing to the judge that the analyst who had conducted the tests no longer worked for the Massachusetts crime laboratory and no other analyst was available on the day of the trial.

The defendant argues that, in light of *Melendez-Diaz*, we should hold that, where the Commonwealth does not call an analyst to testify concerning the chemical composition of a drug, it may not "rely solely on that expert testimony to establish chemical composition and, instead, should be required to provide corroborating evidence." Otherwise, he argues, the Commonwealth can use expert testimony to "avoid the confrontation requirement" articulated in *Melendez-Diaz*. Citing *Dawson, supra* at 467, he also contends that, in any event, Montana's testimony that the substance he examined "to me it looks like marijuana" was not one of the "rare cases" where such testimony would be legally sufficient, because it was based solely on a visual and tactile inspection of the marijuana, both of which occurred through the plastic bags, and was "without explanation as to how he came to those conclusions through his training and experience." We consider each in turn.

We are not persuaded that *Melendez-Diaz* requires the result the defendant claims, as it explicitly rejected the idea that only an analyst's testimony would be sufficient to prove the chemical composition of a substance. The Court stated that its decision "in no way alters the type of evidence (including circumstantial evidence) sufficient to sustain a conviction." *Melendez-Diaz, supra* at 2542 n.14. Thus, *Melendez-Diaz* stands for the proposition that if a certificate of drug analysis is used, it must be accompanied by the testimony of an analyst so that the defendant's right to confrontation is preserved. However, nowhere does the decision state that where, as here, a prosecutor uses the opinion testimony of an expert to establish the composition of a drug, that testimony requires corroboration. Furthermore, the

defendant's right to confrontation is preserved because the expert is subject to cross-examination. A prosecutor's decision to proceed without a certificate of drug analysis does not violate the holding in *Melendez-Diaz*.

Concerning Montana's testimony, the defendant first argues that it was legally insufficient because visual identification of a drug can be unreliable. To support this argument, he cites *Commonwealth* v. *Vasquez, supra* at 352, 365-366 & nn.17, 18, where the court reversed the defendant's conviction of distribution and possession of cocaine because the erroneous admission of certificates of drug analysis without the testimony of the analyst was not harmless beyond a reasonable doubt. It is true that the court stated that "trained and experienced law enforcement personnel" have misidentified cocaine. *Id.* at 365. However, the case concerned different circumstances from those at issue here. The issue before the court in the *Vasquez* case was whether testimony of police officers that a substance was cocaine was enough to render harmless the prejudice caused by the violation of the defendant's constitutional right to confrontation. *Id.* at 352. In concluding that the testimony of the State trooper who stated that the substance was "consistent with crack cocaine" did not render the prejudice harmless, the court stated that, although the trooper testified that he had training and experience, there was no requisite finding that he was an expert, and that the trooper relied on the erroneously admitted certificates for his opinion. *Id.* at 364, 365, citing *Dawson, supra* at 467 (trial judge must find that experience with drug would permit witness to testify as to nature of substance).

Here, the defendant does not contest Montana's qualifications as an expert, and Montana examined the actual substance when he testified that it was marijuana. Concerning the statement in the *Vasquez* case that visual identification has been mistaken, we note that the substance at issue was cocaine, a compound, whereas here, the substance is a marijuana plant where the risk of misidentification by an expert is lower. See *State* v. *Maupin,* 42 Ohio St. 2d 473, 480 (1975), quoting 23 C.J.S. Criminal Law § 864, at 408 ("Marijuana, not being an extract or preparation difficult or impossible to characterize without chemical analysis, but consisting of the dried leaves, stems, and seeds of a plant which anyone reasonably familiar therewith should be

able to identify by appearance, it is not error to permit officers who have had experience in searching for and obtaining marijuana to testify that a certain substance is marijuana . . .").

Moreover, the cases cited in *Vasquez* to support the statement that visual identification of drugs has been mistaken all concern cocaine rather than marijuana, and none concerns the testimony of an expert witness. *Id.* at 365-366, citing *Commonwealth* v. *LaVelle*, 414 Mass. 146, 148 (1993) (undercover informant purchased what detectives "presumed" to be cocaine); *Care & Protection of Frank*, 409 Mass. 492, 495-496 (1991) (powdery substance seized by police was not cocaine); and *Commonwealth* v. *Scott*, 428 Mass. 362, 363 (1998) (substance defendant sold as cocaine was baking soda). See *Vasquez, supra* at 366 n.19, citing *Cook* v. *United States*, 362 F.2d 548, 549 (9th Cir. 1966) (powdered cocaine is nondescript white powder, visually indistinct from other white powders). The defendant has cited no cases where a qualified expert misidentified marijuana.

Cases have upheld the sufficiency of the evidence where the proof of the substance was solely by testimony of individuals who were familiar with it. See, e.g., *Commonwealth* v. *Cantres, supra* at 245-247 (heroin addict qualified to testify that substance defendant conspired to distribute was heroin); *Commonwealth* v. *Madera*, 76 Mass. App. Ct. 154, 157-159 (2010) (police officials with extensive training and experience in narcotics identified substance as marijuana, aiding court in finding erroneous admission of certificate of drug analysis harmless beyond reasonable doubt).[5] Because the focus of the *Vasquez* case was whether the quantum of evidence rendered harmless the violation of the

---

[5]Cases from other jurisdictions likewise have held that the testimony of a qualified witness is sufficient to establish that a substance was marijuana. For example, two cases present nearly identical testimony. See *State* v. *Fletcher*, 92 N.C. App. 50, 56-57 (1988), and *State* v. *Willis*, 219 Or. App. 268, 271-273 (2008), where the courts held that the evidence that the substance was marijuana was sufficient where experienced officers testified that a substance was marijuana based on their visual observation through clear plastic bags. See also, e.g., *United States* v. *Easley*, 70 F.3d 65, 67-68 (8th Cir. 1995) (testimony of experienced officer assigned to marijuana eradication unit that plants he found and eradicated were marijuana was sufficient; jury also heard evidence that plants could not have been wild marijuana or ditchweed, because they were cultivated in rows; and other plants tested from same area proved to be marijuana); *Garrett* v. *State*, 504 So. 2d 319, 322-324 (Ala. Crim. App. 1986) (no error where officer visually identified substance as marijuana); *Atkinson* v.

defendant's constitutional right, it has done nothing to alter this jurisprudence. Indeed, the *Vasquez* case cited the *Dawson* case when it evaluated whether the police officer was an expert. *Commonwealth* v. *Vasquez, supra* at 365. Cf. *Commonwealth* v. *Charles*, 456 Mass. 378, 382 (2010), quoting *Dawson, supra* at 467 (testimony of police officers lacking expertise could not overcome prejudicial error in admitting certificate of drug analysis).

We do not agree with the defendant that Montana cited no specific attributes of marijuana, and no objective identifiers, which the defendant contends should have been leaf shape or structure.[6] For twenty of his thirty-nine years as a police officer, Montana was in charge of a narcotics unit. He had extensive training in identifying marijuana, including identification solely through touch. He also had extensive experience in all aspects of thousands of local, State, and Federal narcotics investigations, including the purchase of marijuana. This expertise, together with his testimony identifying the substance based on its brownish color, the presence of twigs and seeds, and the feel of it through the clear plastic bags, provided the requisite attributes and identifiers. Furthermore, Montana's expert testimony that the seeds were "consistent with" seeds he had seen in marijuana he had seized in the past was sufficient evidence to support an inference from which a jury could conclude, beyond a reasonable doubt, that the substance was marijuana, given that the alternative inference was that someone put marijuana seeds in another substance.[7]

In addition, the covert nature of the defendant's behavior and denial that he met anyone in a red car goes to the identity of the

*State*, 243 Ga. App. 570, 571-573 (2000) (identification testimony of experienced officers admissible; scientific testing not required to establish substance is marijuana); *State* v. *Dobbs*, 100 N.M. 60, 69 (1983) (lay opinion concerning identity of marijuana admissible; qualification of witness goes to weight not admissibility).

[6]The defendant does not argue that the substance Montana examined was in leaf form.

[7]We note, however, that the Commonwealth could have presented better evidence by instructing Montana to open the glassine bags and smell the marijuana. See generally *Sims* v. *State*, 255 Ark. 87, 88-89 (1973), cert. denied, 416 U.S. 944 (1974) (officers' experience qualified "them to identify marijuana by sight and smell").

substance. See *United States* v. *Walters*, 904 F.2d 765, 771 (1st Cir. 1990) (court considered testimony of cocaine user as well as price, packaging, and exchange of money in determining whether government established substance was cocaine); *United States* v. *Murray*, 753 F.2d 612, 615 (7th Cir. 1985) (testimony of members of drug ring as well as circumstantial evidence of high price and covert nature of the purchases more than sufficient to establish that substance was marijuana); *United States* v. *Harrell*, 737 F.2d 971, 978 (11th Cir. 1984).[8] There was no error.

2. *Jury instruction.* In the charge to the jury, the judge instructed that they should treat an expert witness like any other witness, in that they alone would decide whether to accept or reject the expert's testimony in whole or in part and what conclusions they would draw from that testimony. The defendant did not object.

Relying on *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 446-447 (2004), the defendant now argues that, where the Commonwealth offers expert testimony to prove the chemical composition of a substance instead of presenting a certificate of drug analysis and the testimony of an analyst, we should require that the jury be instructed to use "great caution and care" when they evaluate that testimony. He argues that such an instruction is necessary so that the jury are not under the impression that the expert's opinion is particularly reliable and instead "would know that the Commonwealth's best evidence was uncorroborated opinion, rather than scientific." He asserts that where there is only expert testimony, a defendant's challenge to the testimony is necessarily limited to asking whether a chemical

---

[8]The defendant also argues that Montana's examination is inconsistent with State police protocols for forensic testing, which, he claims, requires "visual, olfactory, microscopic, and forensic testing" of marijuana. He sets forth the protocol's description of marijuana leaves. Although these protocols are not in the record before us, he asks that we take judicial notice of them. Assuming, arguendo, that the defendant's representation of the protocols is correct, it adds nothing to our discussion. Montana was called not as a forensic expert, but pursuant to our case law that allows police officers who have sufficient experience and knowledge to qualify as an expert to testify concerning the nature of a substance that the Commonwealth purports to be a particular drug. Here, the question is whether, in the *absence of forensic evidence*, the testimony offered by Montana was sufficient to establish proof that the substance at issue was marijuana.

analysis was performed, unless the defendant calls its own expert. We decline to require such an instruction as it is contrary to our established case law.

The defendant's reliance on the *DiGiambattista* case, which concerned the voluntariness of the defendant's unrecorded statement to police, who used trickery to obtain his confession to arson, is not apt. See *id.* at 424, 439. A statement that is the product of coercion deprives a defendant of his due process rights under the Fourteenth Amendment to the United States Constitution. *Commonwealth* v. *Mahnke,* 368 Mass. 662, 679 (1975), cert. denied, 425 U.S. 959 (1976), citing *Rogers* v. *Richmond,* 365 U.S. 534, 540-541 (1961). In the *DiGiambattista* case, the court stated that obtaining a defendant's exact statement is critical, "[g]iven the fine line between proper and improper interrogation techniques." *Id.* at 440, quoting *Commonwealth* v. *Scoggins,* 439 Mass. 571, 577 n.4 (2003). The court held that where police failed to make a contemporaneous recording of a defendant's statement to them, and the Commonwealth instead relied on the testimony of interrogating officers as to what the defendant said, the jury should be instructed that they should use "great care and caution" in evaluating a defendant's alleged statement. *Commonwealth* v. *DiGiambattista, supra* at 447-448.

This case does not concern the voluntariness of a defendant's statement to police. Rather, it concerns trial testimony of an expert as to the chemical composition of a substance in evidence. Defense counsel cross-examined the expert, asking specifically whether he had performed a scientific test on the substance. See *Commonwealth* v. *Reynolds,* 429 Mass. 388, 390-392 (1999), and cases cited (defendant has right to question adequacy of police investigation); *Sacco* v. *Roupenian,* 409 Mass. 25, 30 (1990) (adverse party free to attack omissions, inconsistencies, or flaws of expert opinion).

We do not agree with the defendant that without a cautionary instruction, the jury are left with the impression that the testimony is particularly reliable. The judge's instruction, which followed the instruction recommended by this court, specifically told the jury that they could accept or reject the expert's testimony. See *Commonwealth* v. *Hinds,* 450 Mass. 1, 12-13 & n.7 (2007),

*S.C.,* 457 Mass. 83 (2010) (setting forth "better" jury instruction concerning expert testimony). The judge also instructed them that they alone were to determine whether the substance at issue was, in fact, marijuana.

We also are not persuaded by the defendant's argument that his only option was to ask on cross-examination whether tests were performed. Nothing prevented the defendant from requesting a continuance until a State analyst was available to testify or from calling his own expert.[9] See *Commonwealth* v. *Shanley,* 455 Mass. 752, 762 (2010) ("the validity and credibility of the expert testimony is subject to challenge like any other testimony, including through the admission of opposing expert testimony").

3. *Hypothetical questions to expert.* At trial, the prosecutor posed a hypothetical to Montana using the facts in evidence (as set forth, *supra*), after which Montana offered an expert opinion that the actions of the hypothetical person were "consistent with" a street-level drug transaction.[10] At the conclusion of Montana's articulation of his opinion, the judge instructed the

---

[9]We note that the fact that the defendant chose not to request a continuance or to call his own expert could be viewed as a trial tactic to capitalize on the unavailability of the Commonwealth's analyst and the Commonwealth's choice to proceed with trial relying solely on Montana's expert testimony as to the composition of the substance at issue. See *Commonwealth* v. *Silanskas,* 433 Mass. 678, 696 (2001) (appellate court will not ignore strategy on which case was tried).

[10]Montana's full response was:

"Well, it is consistent with [a] street level drug transaction. The reasons . . . would be . . . here you have [a] person who's on a busy roadway, he's on a phone, he appears to be having conversation on the phone, he's pacing back and forth, he's looking around and then shortly thereafter a vehicle pulls into the [lot] and he immediately goes over to that particular vehicle and they have a conversation. That party gets out of the car, they have a conversation and he parks his car and he goes into the restaurant. Shortly thereafter another vehicle pulls in and that party now goes over to that particular vehicle and appears to have another conversation with that particular person, and there appears to be some sort of an exchange there. He then goes back to the first car and [it] appears that he drops something off in that particular car and then he leaves and then subsequently he comes back and the other person comes out and they appear to have some sort of a conversation with each other there. When the police [be]come involved there and they look down and they find the packages then they stop this particular person and he has monies on him, you said $120, and judging by those bags, in my opinion, those bags would be bags would be equivalent of

jury that Montana's opinion was based on assumed facts, but that the jury were the ones who found the facts and, therefore, the opinion had no value unless they found the assumed facts to be true. The defendant did not object.

The defendant argues that Montana's opinion improperly commented on the defendant's guilt where the opinion relied on the precise acts allegedly engaged in by the defendant. He asserts that this court should rule that a police expert may explain the general behavior of drug distributors but the Commonwealth may not present the precise facts in evidence in hypothetical form to elicit an opinion whether the actions described are "consistent with" the commission of a crime. We decline to do so.

The defendant concedes, as he must, that our courts repeatedly have held that a properly qualified expert witness is permitted to opine based on a hypothetical that is grounded in facts in evidence, as being "consistent with" a drug transaction. See, e.g., *Commonwealth* v. *Dancy*, 75 Mass. App. Ct. 175, 184 (2009), citing *Commonwealth* v. *Burgess* 450 Mass. 422, 436 (2008) ("use of hypothetical questions during direct examination may be admissible where they are based on evidence already admitted in trial and do not require the witness to comment on the guilt or innocence of the defendant"); *Commonwealth* v. *Grissett*, 66 Mass. App. Ct. 454, 457 (2006), quoting *Commonwealth* v. *Wilson*, 441 Mass. 390, 401 (2004) ("such testimony may be admitted only if it is 'limited to an opinion that the hypothetical facts were consistent with possession of [subject drugs] with the intent to distribute' "). The subject matter of the testimony must be within the witness's field of

---

like $20 apiece, so they would be $40 and he has cash on him. That would be consistent with what he had just got from the other person."

In response to a question to identify the various players in the deal, Montana went on to testify:

"When I look at . . . those facts here, I see this person is like a little higher level type of distributor because he's smart enough to turn around and not have anything on him. Even when the police stop him, he only has the cash on him and he's smart enough to be able to make a phone call, have somebody else bring the stuff, just bring what he needs and then they leave and so when he does get stopped . . . all he has on him is just the cash. Obviously, unbeknownst to him is that . . . the police have been watching all of his actions prior to that."

expertise and the witness must not *directly* express his views on the defendant's guilt. *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 579 (1998), citing *Commonwealth* v. *Pikul*, 400 Mass. 550, 554 (1987). However, such opinion testimony may touch on an ultimate issue in the case if that testimony aids the jury in reaching a decision. *Commonwealth* v. *Dancy*, *supra* at 182 (officer's response that "[b]ased on my training and experience [the hypothetical] would . . . lead me to believe that there may have been a drug transaction" was deemed proper).

The defendant's reliance on cases that address impermissible opinion testimony concerning a defendant's guilt given by *percipient* witnesses do nothing to support his argument that we should change our jurisprudence.[11] See. e.g., *Commonwealth* v. *Woods*, 419 Mass. 366, 368, 375 (1995) (testimony of police witnesses to transaction, that defendant engaged in drug dealing, was impermissible opinion of guilt); *Commonwealth* v. *Tanner*, *supra* at 580 (officer's testimony that he "believed a drug transaction had taken place" was error).[12] A risk of prejudice is great where a percipient witness comments on a defendant's guilt because the line between "specific observations and expert generalizations [becomes] blurred." *Id.* at 579. It may result in improper vouching by the Commonwealth. See *Commonwealth* v. *Burgess*, *supra* at 434-436 (asking hypotheticals of detective who collected evidence at scene improper because his observations are not appropriate subject for expert question and invades province of jury; improper vouching where detective was asked whether Commonwealth's theory of case was consistent with his observations; however, hypotheticals asked of expert who conducted autopsy of victim were proper).

Here the defendant concedes that "Montana was a *nonpercipient* witness and did not explicitly state that the defendant 'was involved in a drug sale,' " (emphasis added). Montana's testimony was properly confined to whether the circumstances

---

[11] Likewise his reliance on M.S. Brodin & M.A. Avery, Massachusetts Evidence § 7.3.4, at 404-405 & nn. 13, 15 (8th ed. 2007), is not apt. That discussion concerns testimony by percipient witnesses.

[12] We do not agree with the defendant's assertion that Montana's testimony (see note 10, *supra*) was "conclusory."

presented in the hypothetical were "consistent with" a drug transaction. There was no error.

*Judgments affirmed.*