Lu, JohnT., J.
INTRODUCTION
On January 29, 2008, the defendant, Angel Rodriguez (Mr. Rodriguez) pled guilty to one count of trafficking in cocaine over twenty-eight grams (G.L.c. 94C, §32E(b)(2) (2007)). This court (Whitehead, J.) sentenced him to five to seven years in the Massachusetts Correctional Institution at Cedar Junction. At the plea hearing, the Commonwealth recited the following facts the government would have relied on if the case had gone to trial:
*219 The Lawrence police report that at 6 p.m. on April 18th, 2007, . . . they were conducting surveillance of 35 Cedar Street, the second floor which is where [Mr. Rodriguez and his co-defendant] lived at the time. They did see Mr. Rodriguez drive away, at one point, in a Honda that was registered to [his co-defendant].
On that evening, they executed a search warrant for that address. After knocking several times on the rear door, they waited about one to two minutes before [the co-defendant] answered the door.
While she answered the rear door, at that same time, Mr. Rodriguez ran out the front door with a scale with residue in his hands. Officers were waiting at that front door for him. He had a large amount of cocaine on a plate. Also on the plate was a plastic bag with residue and a softball-sized piece of cocaine that was in the process of being cooked and drying into crack cocaine.
. . . [W]hen the officers were able to retrieve it, the defendant actually dropped it onto the foot of one of the detectives. It weighed out to over 129 grams of cocaine.
. . . [T]hey note that Mr. Rodriguez also, when he was arrested, had $375 on his person.
Those are essentially the facts.
Exhibit 30, at 15-16. The court then asked Mr. Rodriguez if the facts were true and if he understood that, by pleading guiliy, he “admitted] those facts and all other facts which are necessary to make out [his] guilt.” Exhibit 30, at 17. Mr. Rodriguez answered affirmatively to the court’s questions. Id.
Annie Dookhan (Ms. Dookhan) served as the primary chemist in this case, signing the drug certificate that identified the substance recovered from Mr. Rodriguez as cocaine. After learning of Ms. Dookhan’s misconduct between 2008 and 2011 at the William A. Hinton State Laboratory Institute in Jamaica Plain where the testing of this substance occurred, Mr. Rodriguez filed a motion to vacate his guilty plea. After a February 2013 non-evidentiaiy hearing[1] on Mr. Rodriguez’s motion, the Special Judicial Magistrate (Cratsley, M.J.), on March 28, 2013, issued Proposed Findings and Order (proposal) allowing Mr. Rodriguez’s motion.
The Commonwealth’s objects to the proposal pursuant to the Order of Assignment.[2] This court held a hearing on this objection on April 19, 2013, and informed Mr. Rodriguez and the Commonwealth of its intention to view the matter de novo, with the proposal serving as persuasive authority only.[3]
BACKGROUND
Based on oral arguments and a review of the parties’ papers and stipulated exhibits, the court accepts the Special Judicial Magistrate’s factual findings concerning Ms. Dookhan’s misconduct for purposes of this decision.
DISCUSSION
“A motion to withdraw a guilty plea is treated as a motion for a new trial under Mass.R.Crim.P. 30(b),... [and] [a] judge may grant the defendant’s motion ‘only if it appears that justice may not have been done.’ ” Commonwealth v. Furr, 454 Mass. 101, 106 (2009) (internal citation and quotations omitted); see Commonwealth v. Berrios, 447 Mass. 701, 708 (2006) (noting that even though “the disposition of such a motion is within the discretion of the judge,” the standard of review is “rigorous”). “Due process requires that ‘a guiliy plea should not be accepted, and if accepted must be later set aside,’ unless the contemporaneous record contains an affirmative showing that the defendant’s plea was intelligently and voluntarily made.” Furr, 454 Mass. at 106; see Commonwealth v. Desrosier, 56 Mass.App.Ct. 348, 354 (2002) (“As a matter of constitutional due process, a guiliy plea may be nullified if it does not appear affirmatively that the defendant entered the plea freely and voluntarily”).
Mr. Rodriguez argues that Ms. Dookhan’s misconduct constitutes newly discovered evidence, renders the drug certificate in this case unreliable, and serves as powerful impeachment material; as a result, Mr. Rodriguez was unable to make a voluntary and intelligent plea. While the Commonwealth disputes that Mr. Rodriguez’s plea was involuntary and unintelligent, and that Ms. Dookhan’s misconduct qualifies as newly discovered evidence, its primary argument in favor of denying Mr. Rodriguez’s motion is the lack of connection between Ms. Dookhan’s misconduct and Mr. Rodriguez’s case. The actual dispute, then, centers on the legal implications of the facts in this case, i.e., what is the effect of Ms. Dookhan’s misconduct on the validity of Mr. Rodriguez’s plea where Ms. Dookhan was the primary chemist but there is no evidence that Ms. Dookhan mishandled the substance recovered from Mr. Rodriguez? Stated another way within the context of Mass. R.Crim.P. 30(b), has justice been done if a defendant pleads guilty without knowing that Ms. Dookhan has been accused of mishandling evidence in other cases during the time period that she was the primary chemist in his case?
“A plea is voluntary if entered without coercion, duress, or improper inducements.” Berrios, 447 Mass. at 708. The United States District Court for the District of Massachusetts recently addressed the matter of voluntariness of a plea under similar circumstances in United States v. Wilkins, 2013 WL 1899614 (D.Mass. May 8, 2013) (Stearns, J.). Although Wilkins does not serve as controlling precedent in this case, a close reading provides a useful framework and assists in the resolution of the issues before this court.
*220 In Wilkins, the defendants moved to vacate their guilty pleas on the basis that, as a result of Ms. Dookhan’s misconduct, “their guilty pleas were obtained in violation of their right to due process and without the effective assistance of counsel.” Id. at *4. They asserted that information regarding “the full range of Ms. Dookhan’s malfeasance!,] ... if provided, would have cast a shadow over the eviden-tiaiy value of Ms. Dookhan’s certifications of the nature and weight of the drugs they were accused of possessing . . . [and] their attorneys’ imperfect knowledge of this potential weakness in the government’s case tainted the advice to plead guilty ...” Id. Under federal law, “a defendant’s guilty plea [must] be voluntary in order to satisfy the Fifth Amendment’s Due Process Clause.” Id. at *5, citing Brady v. United States, 397 U.S. 742 (1970). Compare Farr, 454 Mass. at 106.
To demonstrate that his guilty plea is involuntary, “a defendant must show that (1) ‘some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea’ and (2) that ‘the misconduct influenced his decision to plead guilty, or, put another way, that it was material to that choice.” Wilkins, 2013 WL 1899614, at *6, quoting Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006). With respect to the first prong, the district court compared the situation before it with the facts in Ferrara. Id. There, "the prosecution suppressed a key murder witness’s recantation and coerced the witness . . . into reverting to testimony falsely implicating the defendant in a murder.” Id.; see Ferrara, 456 F.3d at 282-84. The First Circuit held that the recantation evidence “was of enormous significance for impeachment purposes” as the jury might have “hinged” their verdict on an evaluation of that witness’s credibility; and that “the evidence tended to negate the petitioner’s guilt . . . Since these admissions, if accepted as true, would have precluded a jury from holding the petitioner liable for the [charged] murder, the suppressed evidence was suggestive of the petitioner’s factual innocence.” Wilkins, 2013 WL 1899614, at *6 (alteration and ellipses in original) (emphasis omitted), quoting Ferrara, 456 F.3d at 292.
Conversely, in Wilkins, the district court held that “the government’s ‘suppression’ of impeachment evidence concerning Ms. Dookhan . . . falls miles short of the ‘rare instance’ of sufficiently egregious misconduct inducing involuntariness of the kind that figured in Ferrara.” Id. This court respectfully disagrees with the district court’s minimization of the significance of the Ms. Dookhan evidence[4] and concludes that this evidence is sufficiently egregious to satisfy the first prong of the two-part Ferrara test.[5]
“[T]o satisfy the second prong of Ferrara ... a petitioner must show ‘a reasonable probability that, but for [the misconduct], he would not have pleaded guilty and would have insisted on going to trial.’ ” Id. at *7 (alteration in original), quoting Ferrara, 456 F.3d at 294. The First Circuit defined “reasonable probability” as “a probability sufficient to undermine confidence in a belief that the petitioner would have entered a plea.” Id., quoting Ferrara, 456 Mass. at 294. In considering “whether a reasonable defendant standing in the petitioner’s shoes would likely have altered his decision to plead guilty had the prosecution made a clean breast of the evidence in its possession!,]” the court can consider such factors as “whether the . . . evidence would have detracted from the factual basis used to support the plea; . . . whether the . . . evidence could have been used to impeach a witness whose credibility may have been outcome-determinative; . . . [and] whether the . . . evidence would have influenced counsel’s recommendation as to the desirability of accepting a particular plea bargain . . .” Id., quoting Ferrara, 456 F.3d at 294.
The Wilkins court accepted the representations of defendants’ counsel “who state[d] that they would not have advised their clients to plead guilty . . . had they known the extent of Ms. Dookhan’s misconduct!,]” but the court did not believe that there was “a reasonable probability that either defendant would have foregone a guilty plea (whatever counsel’s advice) and taken his chances before a jury in light of the strength of the government’s evidence.” Id. “In addition to the independent retesting of samples of the drugs seized from [the defendants], there was overwhelming circumstantial evidence, . . . including defendants’ own admissions, that they knowingly possessed and sold crack cocaine.” Id. (footnote omitted). The court concluded that, “in light of the sheer weight of the untainted incriminating evidence and the appreciable benefit that defendants received in terms of the ultimate sentences for which their pleas made them eligible, both [defendants] had strong incentives to plead guilty . . . [and] these incentives had nothing to do with the (then unknown) impact that information about Ms. Dookhan might have had on the jury . . .” Id.
Here, the evidence of Ms. Dookhan’s misconduct calls into question not only Ms. Dookhan’s credibility as a witness, but also the reliability of the drug certificate itself, thereby potentially jeopardizing the Commonwealth’s ability to meet its burden at trial of proving “beyond a reasonable doubt that the substance at issue ‘is a particular drug’ . . .” Commonwealth v. MacDonald, 459 Mass. 148, 153 (2011) (citation omitted). It is reasonably probable, then, that Mr. Rodriguez would not have entered a guilty plea if he had known of Ms. Dookhan’s misconduct. Mr. Rodriguez has accordingly satisfied the second prong as well.
*221 Strengthening this conclusion are the affidavits of Mr. Rodriguez and his plea counsel. Mr. Rodriguez’s plea counsel attests that “[t]he entire landscape of [her] discussions and advice to Mr. Rodriguez would have been dramatically altered had [she] known any of the information that [she] currently know[s] about the Department of Public Health Laboratory and the malfeasance happening within the laboratory.” Exhibit 28, par. 20. Given the absence of “other testing or weighing of the suspected narcotics before they were sent to the Department of Public Health laboratory, [she] likely would have advised Mr. Rodriguez to put the Commonwealth to their burden of proof. [She] would have advised a trial on the merits rather than a plea of guilty.” Exhibit 28, par. 23. The Court credits defense counsel’s position.
Mr. Rodriguez himself attests that he pled guilty because he believed that the drug certificates demonstrated “that the Commonwealth had shown that they would meet their burden of proof],]” and he “did not believe that [he] had any realistic means of challenging” the drug certificates. Exhibit 27, pars. 9-10. If he had “known that the chemist involved in [his] case was untrustworthy, [he] would not have changed [his] plea to guilty” but “would have fought this case all the way to trial.” Exhibit 27, pars. 15-16.[6]
As Mr. Rodriguez has demonstrated that his guilty plea was involuntary,[7] it appears that justice may not have been done, and his plea must be vacated.
ORDER
Angel Rodriguez’s Motion to Withdraw his Guilty Plea (Paper #25) is ALLOWED.

he Commonwealth and Mr. Rodriguez stipulated to the admission of certain documents which they presented to the court at this hearing.

he Order of Assignment, issued November 26, 2012 (Rouse, C.J.), provides: “If any party objects to the findings or rulings of the Special Judicial Magistrate, it must notify the Special Judicial Magistrate, opposing counsel and the Regional Administrative Justice in writing within 48 hours after the receipt of the proposed findings and rulings stating the grounds for the objection.”

At the April 2013 hearing, the court marked the proposal Exhibit A for identification.

he facts before it likely influenced that court in reaching that decision: unlike in Ferrara, the facts before the Wilkins court, discussed more fully below, indicated that “there was overwhelming evidence (including defendants’ own admissions in the course of the drug deal [and retesting of the evidence after the defendants moved to vacate their pleas]) that the contraband carried and dealt by [the defendants] was in fact crack cocaine and indeed, defendants do not claim otherwise.” Id. The underlying facts in this case are more like those in Ferrara than in Wilkins, even though Mr. Rodriguez’s “factual innocence” is not as clear as the defendant’s was in Ferrara. Similar to the evidence of the witness’s recantation in Ferrara, the evidence regarding Ms. Dookhan’s misconduct is “of enormous significance for impeachment purposes!,]” see id., and may preclude a jury from finding that the Commonwealth has met its burden beyond a reasonable doubt. See, e.g., Commonwealth v. MacDonald, 459 Mass. 148,153 (2011) (“In a case involving a narcotics offense, the Commonwealth must prove beyond a reasonable doubt that the substance at issue ‘is a particular drug’ because such proof is an element of the crime charged” (citation omitted)); cf. Commonwealth v. Ely, 448 Mass. 473, 485 (2007) (defining “exculpatory evidence” as favorable evidence “that is of significant aid to [the defendant’s] case, ‘whether it furnishes corroboration of the defendant’s story, calls into question a material, although not indispensable, element of the prosecution’s version of the events, or challenges the credibility of a key prosecution witness’ ” (emphases added)).

Ms. Dookhan was an agent of the Commonwealth. See Exhibit 17, at 1-2 (explaining that laboratory where Ms. Dookhan worked was part of Massachusetts Department of Public Health which, in turn, is statutorily required, “upon request from law enforcement authorities, to perform chemical analyses of drugs”).

Mr. Rodriguez adds that, after he filed his motion for a new trial, “the Commonwealth offered [him] a reduced sentence of ‘time served’ ” which he refused “because [he] believe[s] that [his] rights were violated and [he] want[s] to have a trial.” Exhibit 27, pars. 17-18.

A plea is intelligent if “(1) . . . the judge explained] to the defendant the elements of the crime; (2)... counsel! ] • • • has explained to the defendant the elements he admits by his plea; or (3)... the defendant! ] • - - [admitted] to facts recited during the colloquy which constitute the unexplained elements.” Furr, 454 Mass, at 107; see Desrosier, 56Mass.App.Ct. at 354. The record appears to indicate that these procedural requirements for an intelligent plea were satisfied. See Exhibit 30, at 14-16, 17, 25. This court need not consider whether the potential unreliability of certain facts supporting the elements of the crime calls this indication into question given that this court vacates Mr. Rodriguez’s pleabecause itwas involuntary.
This court also need not consider whether the Ms. Dookhan evidence is newly discovered evidence that “casts real doubt on the justice of the [plea].” Commonwealth v. Rosario, 460 Mass. 181, 195 (2011), quoting Commonwealth v. Grace, 397 Mass. 303, 307 (1986); see, e.g., Commonwealth v. Buck, 64 Mass.App.Ct. 760, 765 (2005) (rejecting Commonwealth’s argument that newly discovered evidence was inconsistent with its case, and affirming allowance of defendant’s motion for new trial because “[t]he point is . . . that defense counsel never had the opportunity to argue the various possibilities to the jury, nor did the jury have an opportunity to evaluate such an argument”).