NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-636

COMMONWEALTH

vs.

JOSE ANIBAL RIVERA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2007, the defendant, Jose Rivera, pleaded guilty to two narcotics trafficking charges and one charge of illegal possession of a firearm.  Twelve years later, Rivera filed a motion for new trial based on Annie Dookhan's involvement in his case.  A Superior Court judge denied the motion, concluding that Rivera had not met his burden to show that he would have rejected the plea agreement if he had known of Dookhan's misconduct at the time.  We affirm.

Background.  In November 2005, Lynn police arrested Rivera after seeing him engage in a suspected drug transaction.  Police seized two bags of suspected cocaine from Rivera's customer, who said he had paid Rivera eighty dollars for cocaine.  The powder was not tested at the scene.

Police then visited Rivera's apartment, where his wife allowed them to perform a limited consent search, and later, they obtained a warrant to complete the search, the considerable fruits of which we detail infra. For now it suffices to say that they found 153 grams of a white powder they "recognized to be cocaine" and four grams of a brown powder they "recognized to be heroin"; the substances were weighed at the scene, but not tested. The substances were sent to the Hinton State laboratory, where Dookhan tested them and confirmed them to be cocaine and heroin.

Rivera was indicted on four counts. Count one, trafficking in cocaine in an amount over one hundred grams, carried, at that time, a mandatory minimum sentence of ten years in State prison and a maximum sentence of twenty years. See G. L. c. 94C, § 32E (b), as amended through St. 1992, c. 396, §§ 1-3. Count two, cocaine trafficking in an amount over fourteen grams, carried a mandatory minimum sentence of three years in State prison and a maximum sentence of fifteen years. Id. Count three, possession with intent to distribute a class A substance (heroin) in violation of G. L. c. 94C, § 32 (a), as amended through St. 1983, c. 571, § 1, carried a sentence of up to ten years in State prison. Count four, possession of a firearm without a firearm identification card in violation of G. L. c. 269, § 10 (h), as amended through St. 1998, c. 180, §§ 68-70, was

2

punishable by up to two years in a jail or house of correction. Rivera's wife was also indicted on one count of trafficking cocaine in an amount over fourteen grams, for which she, too, faced a mandatory minimum sentence of three years and up to fifteen years in State prison.

Rivera agreed to plead guilty to one count of trafficking a lesser amount of cocaine (twenty-eight grams or more, G. L. c. § 32E [b] [2]), as well as to possession of heroin with intent to distribute and unlawful possession of a firearm, and to serve five to six years in State prison, followed by two years of probation. In exchange, the Commonwealth declined to prosecute both the second cocaine trafficking charge against Rivera and the charge against Rivera's wife.

In 2019, Rivera filed a motion for new trial, arguing that if he had known of Dookhan's misconduct at the State laboratory, there was a reasonable probability that he would have chosen to go to trial rather than accept the plea agreement. See generally Commonwealth v. Scott, 467 Mass. 336, 338-342 (2014). The motion judge denied the motion without a hearing. In doing so, the motion judge cited three circumstances -- the strength of the Commonwealth's case (even without Dookhan's evidence), the significantly reduced sentence Rivera received as part of the agreement, and the benefit he received when the Commonwealth declined to prosecute the charge against his wife -- as factors

3

that would cause a rational person to accept the plea agreement even with knowledge of Dookhan's misconduct.  This appeal ensued.

Discussion.  The proper method to withdraw a guilty plea is through a motion for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  See Scott, 467 Mass. at 344.  "A motion for a new trial is . . . committed to the sound discretion of the judge," who is the "final arbiter on matters of credibility" (citation omitted).  Id.  We accept the motion judge's findings of fact if supported by the evidence, and we review the decision only to determine if the judge committed "a significant error of law or other abuse of discretion" (citation omitted).  Id.

To prevail on the motion, "the defendant must demonstrate a reasonable probability that he would not have pleaded guilty had he known of Dookhan's misconduct."[1]  Scott, 467 Mass. at 354-355. Relevant factors in this inquiry include:

> "(1) whether evidence of [Dookhan's] misconduct could have detracted from the factual basis used to support the guilty plea, (2) whether the evidence could have been used to impeach a witness whose credibility may have been outcome-determinative, (3) whether the evidence was cumulative of other evidence already in the defendant's possession, (4) whether the evidence would have influenced counsel's recommendation as to whether to accept a particular plea offer, and (5) whether the value of the evidence was

---

[1] The Commonwealth concedes that the first prong of the standard, egregious government misconduct, was met.  See Scott, 467 Mass. at 347-354.

4

outweighed by the benefits of entering into the plea agreement."

Id. at 355-356. The judge may also consider "whether the defendant had a substantial ground of defense that would have been pursued at trial or whether any other special circumstances were present on which the defendant may have placed particular emphasis in deciding whether to accept the government's offer of a plea agreement." Id. at 356. Additionally, "the defendant must 'convince the court that a decision to reject the plea bargain would have been rational under the circumstances'" (citation omitted). Id.

1. Strength of case and grounds of defense. Rivera argues that the judge overestimated the strength of the Commonwealth's case and that, without the laboratory certificates confirming the identity of the substances, the case would have been relatively weak. He also claims that Dookhan's misconduct would have opened a substantial ground of defense: that the substances he was packaging and selling were counterfeit. He notes in his brief that "powdered sugar looks similar to powdered cocaine."

We begin with Rivera's assertion that, had he known of Dookhan's misconduct, he could have subjected her at trial to a "withering cross-examination" that might have led to an acquittal or hung jury. It is reasonable to conclude, however,

5

that if the case had gone to trial with the parties knowing of Dookhan's misconduct, the Commonwealth would not have used Dookhan's testimony or certificates as evidence at all. The defendant thus might have had no opportunity to score points by cross-examining her.[2] Instead, the Commonwealth could have proven its case, as case law permits, using only circumstantial evidence of the identity of the substances suspected to be narcotics. See Commonwealth v. MacDonald, 459 Mass. 148, 154 (2011); Commonwealth v. Dawson, 399 Mass. 465, 467 (1987).

This circumstantial evidence would likely have included testimony from the officers who conducted the arrest and the searches of Rivera's apartment. One officer involved in the search had extensive experience and training as a narcotics investigator and had testified as an expert witness in the District Court. The Commonwealth could have sought to introduce his testimony about the identity of the substances found at the scene. See MacDonald, 459 Mass. at 157. Additionally, the Commonwealth could have sought to elicit testimony from Rivera's customer (e.g., by a plea and cooperation agreement) that he had

---

[2] To be sure, the defendant himself could have called Dookhan as a witness or otherwise presented some defense based on her misconduct. This evidence, however, would not have sufficiently detracted from the strength of the Commonwealth's evidence and the benefits derived from the plea, as explained infra, to cause us to conclude there was a reasonable probability he would not have pleaded guilty.

paid $80 for two baggies of what he believed to be cocaine from Rivera during a surreptitious transaction. See id. at 154 (high sales price and on-the-scene remarks by conspirator identifying substance are relevant to establishing its identity as controlled substance).

More importantly, the Commonwealth's evidence would have shown that the substances were found in circumstances strongly suggesting that they were cocaine and heroin, not powdered sugar or some other look-alike substance. For example, fifteen grams of white powder were discovered in a locked safe which police opened using a key found on Rivera's keychain -- a precaution that would seem unnecessary if the substance were powdered sugar. More was located in a tin in a bedroom armoire: six individual twists weighing a total of three grams. Still more was located in a travel bag and a winter hat hidden inside the sleeve of a black leather jacket in a living room closet: numerous individual bags containing small amounts of suspected cocaine and heroin, some found inside an M & M candy container, as well as three bags of suspected cocaine weighing a total of ninety-five grams, found in a larger bag with cinnamon sticks.[3]

---

[3] We note other cases in which officers have testified that cinnamon and cinnamon sticks, when found with drugs, may demonstrate that the suspect hoped to mask the drugs' odor during a canine search. See United States v. Hamby, 59 F.3d 99, 100 (8th Cir. 1995); State v. Olhausen, 681 N.W.2d 21, 24 (Minn.

That these other quantities of powder were also found in concealed locations similarly suggested their unlawful character.

Moreover, the presence of a large amount of cash and empty bags with white residue implied that Rivera had successfully sold the powder on prior occasions, and the presence of a scale, two boxes of baggies, cutting agents, and two cell phones suggested that he expected to continue to be able to do so -- seemingly an unrealistic plan, if he were consistently cheating his customers.  The presence of a cutting agent suggested Rivera's plan to dilute the powder before selling it -- an unnecessary step if he were merely selling powdered sugar. Finally, the presence of an unlawful firearm, concealed in a container of protein supplement, suggested that Rivera felt the need to protect his stash, with force if necessary.  See, e.g., Commonwealth v. Cannon, 449 Mass. 462, 470 (2007) ("Offenses concerning the trafficking of illegal drugs frequently involve drug dealers being armed and . . . in many cases, shootings and killings occur when . . . a drug deal goes bad, or when others try to steal the drugs" [quotations and citation omitted]).

No doubt the Commonwealth's case would have been weaker without laboratory tests confirming that the substances seized

2004).  See also United States vs. Rivera-Pabon, U.S. Dist. Ct., No. 1:09-CR-0395-JOF-JFK (N.D. Ga. Aug. 9, 2010).

8

were in fact cocaine and heroin.  See Commonwealth v. Vazquez, 456 Mass. 350, 363-367 (2010).  Nevertheless, even with knowledge of Dookhan's misconduct, a rational person would perceive a substantial chance of being found guilty at trial based on the circumstantial evidence available.  Therefore, we see no error in the motion judge's assessment of the strength of the Commonwealth's case and the risk of going to trial.

2.  Benefit to Rivera.  We also agree with the motion judge that the benefits Rivera gained by his plea agreement outweighed any advantage he might have gained from the absence of laboratory certificates at trial.  As discussed above, if found guilty at trial of all four counts, he could have served consecutive mandatory minimum sentences of thirteen years in State prison and up to forty-seven years imprisonment in total.  His wife, who was pregnant at the time of his arrest, would also have faced prison time.  Instead, under the plea agreement, Rivera was sentenced to less than half of his potential mandatory minimum sentences, plus two years of probation, and his wife avoided any prosecution or punishment.

We recognize the potential for unfair coercion when a defendant pleads guilty on the understanding that doing so will spare a loved one the risk of prosecution; however, in this case, Rivera does not raise any such issue.  Here, the judge credited the prosecutor's assertion that the Commonwealth's

9

decision to nolle prosequi Rivera's wife's indictment was a specific condition of Rivera's plea agreement.  This term of the agreement could be viewed as a "special circumstance[] . . . on which the defendant may have placed particular emphasis in deciding whether to accept the government's offer of a plea agreement."  Scott, 467 Mass. at 356.

"Ultimately, a defendant's decision to tender a guilty plea is a unique, individualized decision, and the relevant factors and their relative weight will differ from one case to the next" (citation omitted).  Scott, 467 Mass. at 356.  Viewing this case with the requisite "wide-angled lens," see id. at 357, we see no error or other abuse of discretion in the motion judge's decision to deny Rivera's motion for a new trial.  There was ample support for the judge's conclusion that Rivera failed to show "a reasonable probability that he would not have pleaded

guilty had he known of Dookhan's misconduct."  <u>Id</u>. at 354-355.

                                                <u>Order denying motion for new<br>trial affirmed</u>.

By the Court (Milkey, Sacks &<br>Smyth, JJ.[4]),

Clerk

Entered:  July 1, 2024.

---

[4] The panelists are listed in order of seniority.

11